**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Rag & Bone Holdings, LLC and RB
Topco Sagl,

          Plaintiffs,

     v.

Miramar Brands Group, Inc.,

          Defendant.

Case No. 1:25-cv-09937-LGS

---

## Declaration of Christopher "Sinjin" Smith in Opposition
## to Plaintiff's Motion for Preliminary Injunction

I, Christopher "Sinjin" Smith, declare and state as follows:

1.     I have personal knowledge of the facts stated herein, and if called to testify as a witness, I could and would testify competently thereto.

2.     I am an Olympian, sports executive, and long-time partner to Defendant Miramar Brands Group, Inc. ("MBG"). I am widely recognized for my career in professional beach volleyball, including my role in the global development of the sport through events, media, and brand partnerships. I am the past president of the Association of Volleyball Professionals ("AVP") and former president of the Fédération Internationale du Volleyball ("FIVB") World Council. I helped lead the FIVB effort in a primary role in bringing beach volleyball to the

Atlanta Olympic Games in 1996.  I am also recognized widely in denim culture as a face of Levi Strauss 1980's denim campaigns.  I was recently featured in the subsequent Levi's 501 150th Campaign in their videos and in store globally in Levi's video "One Fair Exchange in the Greatest Story Ever Worn" in 2025.  My image and likeness has been cemented in denim culture for over 45 years.

3.    I have known MBG's principal Stephen Yount Ascher, Jr. for nearly 45 years.  I have worked with him on the development of MBG's original family of "Crown Marks," including Queen & King of the Beach®, Queen & King of the Court®, and King & Queen of the Snow® and Sideout®, as well as the broader MIRAMAR® lifestyle and apparel brand.

4.    I am personally familiar with the origins, evolution, and global reach of the MIRAMAR® trademark.  MBG's roots originated from its California coastal lifestyle brands in the 1980s. I met and worked originally with Stephen Ascher together on the launch of the iconic Sideout® and King of the beach® brands, and our life story became the subject of the 'Side Out' the movie.  These original MIRAMAR® brands were founded at Miramar Beach, and over decades they have grown into an internationally recognized sports and lifestyle platform with broadcast exposure in more than 200 countries and 100 million households.

5.    In my role as a global ambassador and founding voice behind MBG's Crown Marks, I regularly attend MBG-sponsored events, meet with partners,

evaluate branding, and participate in discussions with athletes, retailers, and media entities, including meetings with Hearst Corporation and Lagardère, tour 25-year partner, and the largest media entities in the world. I have firsthand knowledge of how the MIRAMAR® mark functions in the marketplace — always as a brand, never as a descriptive term.

6.      In November 2025, I traveled with Mr. Ascher to London for the Queen & King of the Court® Global Tour event at the Crystal Palace National Sports Centre. This event was broadcast globally and prominently featured MIRAMAR® and its related trademarks on signage, uniforms, media packages, and digital platforms.

7.      While in London for this official MBG event, I became aware that Rag & Bone was simultaneously promoting its new "Miramar"-branded clothing in its London retail store, using MIRAMAR as a sub-brand at point-of-sale. I personally observed consumers and even event attendees referencing Rag & Bone's "Miramar" line and assuming a relationship with MBG's MIRAMAR® brand due to the identical trademark.

8.      It was particularly striking — and concerning — that while MBG was holding a major global sports event in London, Rag & Bone was operating what

appeared to be a parallel "Miramar"-branded retail presence in the same city.  This created immediate and widespread confusion among international athletes, attendees, and industry associates who know me personally as the face of MBG's MIRAMAR® brand and Crown Marks.

9.    Several individuals at the London event approached me and asked whether MBG had launched a clothing collaboration with Rag & Bone, or whether MBG was "behind" the Rag & Bone "Miramar"-branded apparel they saw circulating on social media and in stores.  This confirmed that confusion was not theoretical — it was happening in real time among sophisticated sports and media professionals.

10.    In the months leading up to and following this trip, I saw the brand MIRAMAR used by Rag & Bone in a manner entirely consistent with a brand launch — including:

• MIRAMAR pop-up stores in New York City

• Digital advertisements naming MIRAMAR as the collection

• Influencer content presenting MIRAMAR as a stand-alone brand

• Retail hangtags and signage showing MIRAMAR as the dominant element

• A national Klaviyo campaign titled "New Miramar"

11.    At no point did Rag & Bone's use of MIRAMAR appear descriptive or stylistic to me.  It appeared to be brand appropriation identical in character to MBG's genuine MIRAMAR® branding — the kind I have spent decades helping many famous brands build through televised sports, licensed apparel, and global tours.

12.    I was also aware of third-party confusion in the United States. Individuals close to the beach volleyball community and familiar with MBG's authentic MIRAMAR® brand contacted me and Mr. Ascher to congratulate us on the "Miramar" retail stores opening in New York City — stores that MBG did not open, authorize, or endorse.

13.    This confusion is especially harmful because MBG's Crown Marks represent heritage, authenticity, and decades of goodwill which I have personally helped cultivate.  Rag & Bone's unauthorized use of MIRAMAR jeopardizes the brand identity that MBG has built through sport, community, and global recognition.

14.    Based on my long involvement with MBG, I can state unequivocally that Rag & Bone's use of MIRAMAR is not descriptive apparel nomenclature.  It is brand usage directly conflicting with MBG's registered MIRAMAR® trademark, brand equity, and marketplace identity.

15.    Rag & Bone's misconduct and trademark infringement has caused

damage not only to the MBG's MIRAMAR® brand, but also damage to the integrity and clarity of MBG's global Crown Marks — marks I have spent my career helping to elevate and protect.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and if called to testify, I could and would competently do so.

Executed on this 20th day of January 2026 at Santa Monica, California.

Signed by:



BFC793EE08CE42B...

_____

## CERTIFICATE OF SERVICE

I hereby certify that, on January 20, 2026, a true and correct copy of the

above document was provided to all counsel of record through the Court's

CM/ECF system.


/s/ Stephen M. Lobbin