UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rag & Bone Holdings, LLC and RB Topco Sagl,

        Plaintiffs,

    v.

Miramar Brands Group, Inc.,

        Defendant.

Case No. 1:25-cv-09937-LGS

## Declaration of Theodore Jaffrey in Opposition to Plaintiff's Motion for Preliminary Injunction

I, Theodore Jaffrey, declare and state as follows:

1. I have personal knowledge of the facts stated herein, and if called to testify as a witness, I could and would testify competently thereto.

2. I am 25 years old, a recent resident of New York City now residing in Los Angeles, and a member of the Gen-Z consumer demographic. I have known Stephen Yount Ascher, Jr., the principal of Defendant Miramar Brands Group, Inc. ("MBG") since early childhood. Our families have been friends for many years through the Young President's Organization ("YPO"), and I have grown up hearing about Mr. Ascher's long career in brand development, licensing, and global sports and lifestyle branding.

3.      Because of this longstanding relationship, I have been familiar with MBG since I was a young boy.  I understand MBG to be a legitimate and established brand management company with well-known partners and licensing activities.  Over the years, I heard Mr. Ascher discuss MBG's work with ELLE, ELLE Decor, Tony Hawk, Quiksilver, Mossimo, Sideout, Hang Ten, Lightning Bolt, Spalding, and other fashion and athletic brands.

4.      I also knew that MBG developed and owned the Queen & King of the Beach® and Queen & King of the Court® global sports leagues, which I follow on ESPN and FanDuel as a fan.  I recently watched Hagen Smith, MBG's Global Ambassador live on CBS in the AVP Finals from Chicago, witnessing him wearing his iconic Miramar® King of the Beach® branded hat. I am aware that Hagen Smith is the son of Olympian and legend Sinjin Smith.  I have seen MBG's branding surrounding these global events and associate the name MIRAMAR with MBG's significant, international athleisure, sports and lifestyle brand.

5.      As a result, "Miramar" has always signified to me a real brand that engages in collaborations, licensing deals, and global retail or sports marketing initiatives.  It was never just descriptive or a style word to me.

6.      In late 2025, while using Instagram, I received a targeted advertisement from Rag & Bone promoting apparel under the name "Miramar." The ad displayed "Miramar" prominently as a brand or collection name.  Nothing

suggested this was a fabric description or internal "style" code.

7. Because the ad contained the name "Miramar" used as a brand, and because of my lifelong familiarity with MBG, my immediate and genuine impression was that MBG had entered into a collaboration or partnership with Rag & Bone.

8. Around the same time, I saw posts and online content referencing a "Miramar" pop-up store in Moynihan Train Hall (Penn Station) in New York City, where I lived, in October of 2025. Given my knowledge of MBG's licensing history and brand strength, it seemed completely plausible that MBG had launched a store or collaboration in New York.

9. On October 16, 2025, believing that MBG had opened a MIRAMAR-branded store in Moynihan Train Hall, I texted Mr. Ascher the following message knowing he was in New York City: "How long is the Miramar activation up in the city?"

10. This message accurately reflected my understanding at the time—that is, I believed the "Miramar" pop-up stores were owned, operated and/or authorized by MBG, and that Mr. Ascher naturally would be present for such an opening.

11. At no point did Rag & Bone's advertising, in-store presentation, or promotions suggest that "Miramar" was merely a style name or descriptor. To the contrary, the marketing conveyed to me that MIRAMAR was a standalone brand,

3

consistent with the kinds of authentic collaborations MBG historically has undertaken.

12. I later learned, through Miramar, that there was no collaboration of any kind between Rag & Bone and MBG, but that Rag & Bone was using the MIRAMAR brand without authorization. This was surprising because the presentation of "Miramar" across Instagram and retail messaging appeared indistinguishable from a legitimate brand launch by MBG.

13. My confusion was not hypothetical or forced—it was real, immediate, and reasonable given:

- my familiarity with Miramar's true brand presence,
- Miramar's licensing history and global visibility,
- Rag & Bone's use of "Miramar" as a prominent brand identifier, and
- the appearance of MIRAMAR pop-up stores in New York City.

14. Had Rag & Bone used a clearly descriptive or subordinate term, or had it identified the source more clearly, I would not have been confused. Instead, its use of MIRAMAR caused me to believe that MBG was the source or collaborator, or at least had licensed or authorized the use.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and if called to testify, I could and would competently do so.

4

Executed on this 20th day of January 2026 at Los Angeles, California.

Signed by:

_____
Theodore Jaffrey

1/20/2026

## CERTIFICATE OF SERVICE

I hereby certify that, on January 20, 2026, a true and correct copy of the above document was provided to all counsel of record through the Court's CM/ECF system.

/s/ Stephen M. Lobbin