**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Rag & Bone Holdings, LLC and RB
Topco Sagl,

                Plaintiffs,

        v.

Miramar Brands Group, Inc.,

                Defendant.

Case No. 1:25-cv-09937-LGS

---

### Declaration of Susan Valero in Opposition to
### Plaintiff's Motion for Preliminary Injunction

I, Susan Valero, declare and state as follows:

1.      I have personal knowledge of the facts stated herein, and if called to testify as a witness, I could and would testify competently thereto.

2.      I am the principal of Valero Enterprises, Inc., and for almost 40 years I have worked as an independent brand-licensing executive and sales representative in the apparel, sportswear, and lifestyle industries.  My work involves pitching, negotiating, and structuring licensing relationships for major national and international brands with sophisticated licensees, manufacturers, and retailers.

3.      I have served as an independent contractor and brand representative

for Defendant Miramar Brands Group, Inc. ("MBG"), including pitching brands

owned by MBG and brands MBG represents, including MIRAMAR®, King of the

Beach®, and King of the Court®, as well as MIRAMAR® collaborative and

represented brands such as ELLE, ELLE Decor, Hang Ten and Lightning Bolt.  In

that role, I regularly communicate with senior executives, brand managers, and

licensing decision-makers at established apparel and sportswear companies.

4.      In licensing negotiations, clarity of brand ownership is critical.

Potential licensees routinely conduct diligence on brand ownership, chain of title,

and exclusivity before proceeding.  Any ambiguity regarding who owns or controls

a brand materially impairs the licensing process and directly affects my

professional credibility.

5.      In or around September 2025, while actively pitching MBG's

MIRAMAR® brand for a major sportswear licensing program involving knit and

woven tops and bottoms (including denim), I observed public statements and

materials indicating that Rag & Bone—in conjunction with WHP—was operating

and promoting a program called "Miramar."

6.      Upon seeing this, I was confused and alarmed.  Based on my long-

standing professional relationship with MBG, I understood it to be the owner of the

MIRAMAR® brand including its registered trademark, having owned those rights for decades. The appearance of Rag & Bone publicly using a "Miramar" brand created immediate uncertainty as to whether MBG's rights had been compromised, infringed, transferred, or overridden.

7.      After this information became visible in the marketplace, multiple potential licensees to whom I was pitching MBG's MIRAMAR® brand expressed surprise and concern upon seeing Rag & Bone associated with a "Miramar"-branded program. These parties questioned whether Rag & Bone now owned or controlled the MIRAMAR® brand, or whether MBG still had the authority to license the brand at all.

8.      This confusion directly disrupted my licensing efforts on MBG's behalf. I was placed in the untenable position of attempting to reassure potential licensees—without access to details—that MBG continued to be the rightful owner of the MIRAMAR® brand, while they simultaneously observed public indications suggesting otherwise.

9.      As a licensing executive representing multiple major brands, my credibility depends on accurately presenting brand ownership. The perception that Rag & Bone might now own or control the MIRAMAR® brand has undermined my standing with prospective partners and created reputational risk for me personally.

10. The confusion I am experiencing is not hypothetical, academic, or speculative. It is actual, contemporaneous confusion, experienced by me—a sophisticated, experienced professional—and echoed by potential licensees engaged in real licensing discussions.

11. In my experience, confusion at the licensing and brand-management level is especially serious. Licensing professionals and decision-makers are more informed and more careful than ordinary retail consumers. If confusion exists at this level, it strongly indicates that confusion also exists—and likely has been magnified—among downstream retailers and consumers.

12. Unless resolved, the continued public association between Rag & Bone and the MIRAMAR® brand will continue to interfere with MBG's licensing activities and impair the ability of brand representatives like myself to effectively market and license the MIRAMAR® brand.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and if called to testify, I could and would competently do so.

Executed on this 20th day of January 2026 at Los Angeles, California.



DocuSigned by:

SUSAN VALERO

D2C1C9F821CD404...

Valero Enterprises

1/20/2026

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that, on January 20, 2026, a true and correct copy of the above document was provided to all counsel of record through the Court's CM/ECF system.

                        /s/ Stephen M. Lobbin