UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rag & Bone Holdings, LLC and RB Topco Sagl,

        Plaintiffs,

    v.

Miramar Brands Group, Inc.,

        Defendant.

Case No. 1:25-cv-09937-LGS

## Declaration of Neal Kusnetz in Opposition to Plaintiff's Motion for Preliminary Injunction

I, Neal Kusnetz, declare and state as follows:

1. I have personal knowledge of the facts stated herein, and if called to testify as a witness, I could and would testify competently thereto.

2. I am a long-time apparel and brand senior executive with experience in brand development, management, licensing, product development, and retail distribution. My background includes leadership roles at major consumer and fashion companies.

3. In 2025, I began evaluating a significant licensing and brand development relationship with Defendant Miramar Brands Group, Inc. ("MBG") through my company, Northaven Brand Holdings. The proposal involved

1

licensing certain MBG "Crown Marks" for a new apparel activewear and sportswear program. We executed a formal term sheet, and I began preliminary planning and financial modeling based on MBG's anticipated brand trajectory.

4. At the time of executing the term sheet, I understood MBG to be the exclusive and senior owner of the MIRAMAR® brand including its registered and related trademarks and related IP rights. The brand's heritage, authenticity, and decades-long connection to MBG's "Crown Brands" family of trademarks were important components of my interest investment decisions.

5. Beginning in mid to late 2025, however, I started seeing widespread use of the name "Miramar" as a brand by Rag & Bone in digital advertising, email campaigns, social media, press articles, and retail displays. The presentation of the MIRAMAR name by Rag & Bone is brand-level, not descriptive. It looked to me like a collaboration, acquisition, or major licensing arrangement.

6. I became concerned because this use created the impression that Rag & Bone either owned or controlled the MIRAMAR® brand, or had acquired rights superior to those held by MBG. This caused me to question whether MBG had undisclosed encumbrances, conflicting licenses, or potential litigation exposure that could materially impact any licensing investment or long-term commercial commitment.

7. As Rag & Bone's MIRAMAR marketing escalated—including retail

2

pop-ups, national email campaigns titled "New Miramar," influencer promotions, and editorial coverage in WWD and other publications—I observed growing marketplace confusion. Retailers and consumers now appear to associate the MIRAMAR name with Rag & Bone rather than with MBG.

8.   Because of the widespread publicity around Rag & Bone's products under the MIRAMAR brand, I became concerned that any licensing investment in a MIRAMAR®-branded apparel program would be undermined or overshadowed by Rag & Bone's unauthorized use of the same brand, and that MBG could lose meaningful brand positioning in the apparel sector.

9.   As a result of this confusion and uncertainty, and because Rag & Bone's market conduct created doubt regarding who truly controlled the MIRAMAR name in commerce and particularly in the clothing space, I determined that I could not proceed with the MBG transaction until the trademark issue was resolved. This resulted in a delay of a fully-executed term sheet and disruption to ongoing business planning and investment timelines.

10.   My confusion was not theoretical. The scope and presentation of Rag & Bone's MIRAMAR branding made it appear that Rag & Bone had entered a legitimate relationship with MBG, or that Rag & Bone had priority rights. This perception has directly affected my willingness and ability to move forward with the transaction.

11. I later learned Rag & Bone's use of MIRAMAR was unauthorized and inconsistent with MBG's rights and brand ownership. Had Rag & Bone not used the MIRAMAR name in a way that appeared identical to brand-level usage, I would not have delayed or reconsidered the transaction.

12. Rag & Bone's conduct is causing real commercial harm to MBG's business by interfering with an otherwise viable licensing transaction. The harm resulted directly from marketplace confusion caused by Rag & Bone's extensive, unauthorized use of the MIRAMAR trademark and brand.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and if called to testify, I could and would competently do so.

Executed on this 20th day of January 2026 at ___New York___.

DocuSigned by:
[signature]
E139E1BA997C4D3...
1/20/2026

4

## CERTIFICATE OF SERVICE

I hereby certify that, on January 20, 2026, a true and correct copy of the above document was provided to all counsel of record through the Court's CM/ECF system.

/s/ Stephen M. Lobbin

5