UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rag & Bone Holdings, LLC and RB Topco Sagl,

        Plaintiffs,

    v.

Miramar Brands Group, Inc.,

        Defendant.

Case No. 1:25-cv-09937-LGS

## Declaration of Dale Waters in Opposition to Plaintiff's Motion for Preliminary Injunction

I, Dale Waters, declare and state as follows:

1.    I have personal knowledge of the facts stated herein, and if called to testify as a witness, I could and would testify competently thereto.

2.    I am a principal of Gredale, Inc. and VT USA, and have worked in the fashion, brand management and licensing industry for over 45 years. I created the BUM Equipment Brand in the early 1980's. My work involves the creation of brands, sourcing, brand collaborations, sales, marketing, licensing and negotiating for major national and international brands with sophisticated licensees, manufacturers, and retailers.

1

3. I have known Stephen Yount Ascher, Jr. professionally for many years, and I have been familiar with the MIRAMAR® brand and Miramar Brands Group's history of legitimate licensing work, including brand partnerships in the fashion, lifestyle, and media sectors. Our companies license the ELLE and ELLE Sport brands from Lagardère for footwear, swimwear and activewear, whom Miramar represents globally.

4. In or around mid-September 2025, I became aware of Rag & Bone's widespread use of the name "Miramar" in connection with a new line of apparel. I also began seeing "Rag & Bone/MIRAMAR" presented prominently on Rag & Bone's website and digital marketing channels.

5. In addition to Rag & Bone's own promotional materials, I also read an article published September 5, 2026 in Women's Wear Daily (WWD) describing Rag & Bone's "Miramar" line as a brand-level initiative, and that "a whole generation is learning about Rag & Bone through Miramar." The article mentioned that Miramar pop-up stores were opening in multiple cities and that the MIRAMAR concept was unusual in its scale for a brand. The article went further to state that Rag & Bone intended to expand MIRAMAR stores and brand presence.

6. Based on this WWD coverage—which is regarded in our industry as

authoritative trade reporting—it appeared to me that MIRAMAR had become a major new brand platform within Rag & Bone's business, not a mere style name or descriptor.

7. Because I knew MIRAMAR as Miramar Brands Group, Inc's trademark, and had long associated it with Stephen Ascher's company, I reasonably believed that Rag & Bone/MIRAMAR was a new launch and that the placement of the brands together indicated a collaboration. I assumed the use was an official collaboration or licensing partnership with Miramar Brands Group. I had never seen the "Rag & Bone/MIRAMAR" collaboration in the market prior to their launch in September and the opening of the Rag & Bone MIRAMAR stores.

8. As a result of this belief, on September 15, 2025, I sent Stephen a congratulatory text message: "Hey-Hey Steve- I just saw the RAG & BONE website (I think) a collaboration between Rag & Bone and your MIRAMAR brand—Let me know if congratulations are in order—The MiraMar product on the RAG & BONE sight was OUT of SITE cool—keep the momentum with MIRAMAR—Bravo!"

9. This text accurately reflects my genuine belief at the time that Rag & Bone's MIRAMAR products were officially associated with, or licensed by, Miramar Brands Group.

10. I later learned that no collaboration existed and that Rag & Bone had

recently adopted and promoted the MIRAMAR name without any authorization from Miramar Brands Group. My confusion arose directly from the way Rag & Bone marketed MIRAMAR with a collaborative slash, combined with the authoritative WWD reporting portraying MIRAMAR as a standalone brand extension.

11. As an experienced industry professional—for me to believe— and congratulate Stephen by text—indicates that Rag & Bone's presentation of MIRAMAR conveyed brand-level trademark use, not mere descriptive use.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and if called to testify, I could and would competently do so.

Executed on this 20th day of January 2026 at Los Angeles, California.

Signed by:


0ECC1EA5F1194D2...

DHW

4

CERTIFICATE OF SERVICE

I hereby certify that, on January 20, 2026, a true and correct copy of the above document was provided to all counsel of record through the Court's CM/ECF system.

/s/ Stephen M. Lobbin