**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Rag & Bone Holdings, LLC and RB
Topco Sagl,

        Plaintiffs,

           v.

Miramar Brands Group, Inc.,

        Defendant.

Case No. 1:25-cv-09937-LGS

---

### Reply In Support Of Motion To Dismiss Complaint

None of the Rag & Bone Plaintiffs' opposition arguments has merit, including their consistent mischaracterization of Defendant MBG's motives. Rag & Bone, not MBG, brought this action as part of a misguided strategy to bully a small California brand owner, including by flooding the online and retail marketplaces with "reverse confusion." This Court must not allow Rag & Bone to succeed; instead, this action begs for an injunction to prevent consumer confusion and/or a simple business resolution which would be much more economical for all parties (save litigation counsel).[1]

---

[1] Rag & Bone admits spending "millions of dollars on marketing, advertising, and promoting" the infringing products, which is its "most popular line of products, generating at least 15% of Rag & Bone's revenues annually." Choosing litigation over licensing to secure necessary trademark rights to the already-registered MIRAMAR® brand is patently unreasonable corporate behavior.

First, Rag & Bone argues that MBG's actions and takedown efforts included some entities located in New York, including Saks, Nordstrom and Rag & Bone itself and its New York "popup store," and including MBG's prior counsel "operating in New York County."[2] But none of these connections, individually or taken together, substantiate sufficient "purposeful availment" by MBG of the specific matters being litigated in this action. The case relied on by Rag & Bone—*PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105 (2d Cir. 1997)—is distinguishable. In *PDK*, the court found Defendant Friedlander's "activity in New York reaches beyond merely sending a 'cease and desist' letter to PDK and attempting to settle alleged legal claims." *See id.* at 1109 (citing *Modern Computer Corp. v. Ma*, 862 F. Supp. 938, 945 (E.D.N.Y. 1994) (cease and desist letter "is alone insufficient to establish the minimum contacts necessary for personal jurisdiction")). As the court explained:

> Friedlander himself describes his "business" as seeking investments in the development of his weight loss product and negotiating royalty agreements with alleged violators of his patents. Attorney Fallon admits in an affidavit—the only document submitted in support of Friedlander's Rule 12(b)(2) motion—that he has represented Friedlander in these pursuits in New York and other states since 1986. PDK's vice-president stated in an affidavit that over a three-month period in 1993, Fallon frequently contacted PDK by phone and letter from his firm's New York City office, purportedly to negotiate a settlement of Friedlander's alleged legal claims. PDK maintains,

---

[2] Rag & Bone argues that in an initial appearance by its prior counsel, MBG did not object to personal jurisdiction (*see* ECF No. 20 at 2), but MBG timely complied with Rule 12(b) in filing this Motion.

however, that Friedlander's real purpose was to solicit PDK's investment in his weight loss product.  Indeed, in one letter, Fallon asks PDK's counsel to "call so we can explore the investment mode(s) more fully."  This **persistent campaign** by Friedlander's New York agent to secure PDK's investment constitutes business transacted in New York under CPLR § 302(a)(1).

*Id.* at 1109-1110 (emphasis added) ("Friedlander initiated from New York persistent, vexing communications with PDK with regard to their respective weight loss products . . . [which are] unique business transactions in New York.").

More importantly, "fairness" compels a lack of jurisdiction.  The conclusion here that personal jurisdiction is lacking is bolstered by the more recent discussion and holding by the Federal Circuit (the nation's primary IP court) in *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998):

Principles of fair play and substantial justice afford a patentee [or trademark owner] sufficient latitude to inform others of its [IP] rights without subjecting itself to jurisdiction in a foreign forum.  *A patentee [or trademark owner] should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement*.  Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness. . . .

Moreover, an offer for a license within a cease-and-desist letter does not somehow convert that letter into something more than it was already.  An offer to license is more closely akin to an offer for settlement of a disputed claim rather than an arms-length negotiation in anticipation of a long-term continuing business relationship.  Treating such hybrid cease-and-desist letters differently would also be contrary to fair play and substantial justice by providing disincentives for the initiation of settlement negotiations.

3

The policy favoring settlement is manifest in, among other places, the Federal Rules of Evidence. The Rules provide that evidence of "promising to accept . . . a valuable consideration in . . . attempting to compromise a claim" is not admissible "to prove liability" for the claim. *See* Fed. R. Evid. 408. Nor is "evidence of conduct or statements made in compromise negotiations." *Id.* Although the Rules do not explicitly make evidence of such negotiations inadmissible to establish personal jurisdiction, the policy underlying the Rules supports an approach that fosters settlement of infringement claims. Indeed, ***this policy squarely invokes one of the considerations enumerated by the Supreme Court for the second prong of a proper Due Process analysis, namely, "the interstate judicial system's interest in obtaining the most efficient resolution of controversies."*** *World-Wide Volkswagen*, 444 U.S. at 292, 100 S. Ct. 559; *see also Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 524 (8th Cir.1996) ("[C]ourts have hesitated to use unsuccessful settlement discussions as 'contacts' for jurisdictional purposes.").

In this case, HHI sent three warning letters. Shortly after receipt of the third letter, Red Wing filed its declaratory judgment claim. ***As this court has stated before, cease-and-desist letters alone do not suffice to justify personal jurisdiction. Specifically, such letters cannot satisfy the second prong of the Due Process inquiry***. Standards of fairness demand that HHI be insulated from personal jurisdiction in a distant foreign forum when its only contacts with that forum were efforts to give proper notice of its patent rights. HHI's three letters alone do not create personal jurisdiction in Minnesota.

*Red Wing*, 148 F.3d at 1360-61 (emphasis added) (internal citations omitted).

Second, Rag & Bone argues that MBG's long term business partnership with Hearst supports this Court's personal jurisdiction. But MBG specifically does business with Lagardère Group and Hachette Filipacchi Presse ("Hachette") and its executives based in Paris, France, not with the affiliated Hearst in New York. Moreover, because the dealings do not relate to Rag & Bone's trademark

4

infringement, the MBG-Hachette dealings do not support *specific* personal jurisdiction, and it is indisputable that MBG is not subject to this Court's general personal jurisdiction. *See* Ascher Reply Decl. ¶ 2; *Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc.*, No. 25-1260, 2025 WL 2916153, at \*4-5 (S.D.N.Y. Oct. 14, 2025) (denying general personal jurisdiction over California defendant even with New York offices).

Third, Rag & Bone argues that this Court should confirm (and not transfer) venue, but the Court enjoys considerable discretion to transfer this action to MBG's California home, where the action should have been filed in the first place, and where an action for infringement already is pending. Even if the Court finds MBG's brief contacts with a few entities located in New York is legally sufficient for personal jurisdiction and venue, the Court should weigh the 28 U.S.C. § 1404(a) factors in favor of a transfer to the Central District of California. The "convenience of witnesses" favors California because MBG is a small company with all but one of its relevant witnesses—including declarants Ascher, Smith, Valero, Jaffrey, Khuu, Lorber and Waters—located in the Los Angeles area. *See* ECF Nos. 54-12 to 54-18. The "convenience of parties" favors transfer because MBG is less able to defend itself in New York, while Rag & Bone is fully able to litigate in California. In particular, the conglomerate Guess?, Inc. owns Rag & Bone's operating assets and liabilities (according to its own SEC filings and press

5

releases), and is headquartered in Los Angeles, California.  The "locus of operative facts" and "location of relevant documents" mainly is California, with Defendant MBG.  The "relative financial means of the parties" favors California, because MBG is has a small fraction of the means of Rag & Bone.  The other factors are neutral or irrelevant.  On balance, a discretionary transfer is justifies, and warranted.

## Conclusion

For each and all of the above reasons, Defendant MBG respectfully requests that this Court should dismiss or transfer Plaintiffs' Complaint.

Dated:  March 16, 2026                Respectfully submitted,

/s/ Stephen M. Lobbin
Stephen M. Lobbin (CA-SBN 181195)
* admitted in SDNY
sml@smlavvocati.com
**SML Avvocati P.C.**
4640 Cass Street #90142
San Diego, California 92109
Tel: 949.636.1391

Attorneys for Defendant

6

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on March 16, 2026, a true and correct copy of the above document was provided to all counsel of record through the Court's CM/ECF system.

/s/ Stephen M. Lobbin