# EXHIBIT A

# Katten

**50 Rockefeller Plaza**
**New York, NY 10020-1605**
**+1.212.940.8800 tel**
**katten.com**

**MARK T. CIANI**
mark.ciani@katten.com
+1.212.940.6509 direct

March 16, 2026

*Via Email*

Stephen M. Lobbin
SML Avvocati P.C.
4640 Cass St., #90142
San Diego, CA 92109
sml@smlavvocati.com

Re:     ***Rag & Bone Holdings, LLC, et al. v. Miramar Brands Group, Inc.,*** **Case No. 1:25-cv-09937**

Mr. Lobbin:

We write on behalf of Plaintiffs Rag & Bone Holdings, LLC ("Rag & Bone") and RB Topco Sagl (collectively, "Plaintiffs") to address significant deficiencies in Miramar Brands Group, Inc.'s ("MBG" or "Defendant") recent document productions in response to Plaintiffs' First Set of Requests for Production (the "RFPs"), as well as MBG's witnesses' blanket objection to producing documents of any kind. By addressing certain deficiencies in this letter, Plaintiffs do not waive any rights to assert additional objections or deficiencies at a later date.

Both the document productions themselves and Stephen Ascher's testimony make clear that MBG has failed to produce responsive documents, and that the methods employed to collect and produce documents are manifestly unreliable.

## 1.   Deficiencies in MBG's Document Production

Mr. Ascher testified that MBG produced documents responsive to RFP Requests 2 and 4-6. (Ascher Dep. 51:11-52:21; 57:23-16; 59:2-25.) We have not identified responsive documents to those requests in MBG's production. For example, Request 2 calls for the production of "[d]ocuments and Communications sufficient to show the results generated as a result of search engine searches of "MIRAMAR clothing" prior to 2025." While MBG produced certain documents containing those searches, the documents are not dated, nor do they contain metadata reflecting the date on which the searches were performed; consequently, we cannot confirm whether the searches were performed "prior to 2025." The searches also appear incomplete. *See infra* n.3.   As another example, Request 4 seeks "[a]ll Communications from and to retail customers concerning the RAG & BONE Miramar Collection." But in his deposition, Mr. Ascher was unable to identify any communications with "retail customers" that were produced. (Ascher Dep. 52:9-57:22.) Accordingly, please identify the specific documents in MBG's production that

KATTEN MUCHIN ROSENMAN LLP

CHARLOTTE   CHICAGO   DALLAS   LOS ANGELES   NEW YORK

ORANGE COUNTY   SHANGHAI   WASHINGTON, DC

A limited liability partnership including professional corporations

LONDON: KATTEN MUCHIN ROSENMAN UK LLP

# Katten

are responsive to Requests 2, 4, 5, and 6 by Bates number.[1] Alternatively, if no documents responsive to these requests exist, please provide a written representation confirming that no such documents exist.

## 2. Testimony Confirming the Existence of Unproduced Documents

With respect to all other categories of documents identified in the RFPs, Mr. Ascher's testimony confirms that additional documents exist that were not produced. Certain illustrative examples are provided below, but they are just that: examples. They confirm that MBG's search for responsive documents more generally was not reasonably diligent and needs to be performed with greater attorney oversight and involvement. Please consider the following examples of obvious and critical deficiencies in the production:

- Northaven Brand Holdings Deal Documents

Request 12 calls for the production of "[a]ll Communications between You and any MBG Declarant concerning any potential or actual transaction between You and any MBG Declarant." When asked about a potential licensing deal with Northaven Brand Holdings, Mr. Ascher testified that "there's multiple agreements with Mr. Kusnetz" and that "[w]e start with an MNDA, then we sign a consultant agreement, and then we enter into term sheets, and then we do contracts." (Ascher Dep. 268:14-21).

When asked what activity happened between February and September 2025 with respect to the Northaven deal, Mr. Ascher testified: "Exchanging of trend files, of logos, of labels, samples back and forth, labels and trims sent, contacts made." (Ascher Dep. 283:7-13.) Mr. Ascher further testified that "documents were exchanged" with Mr. Kusnetz over text and email, including "term sheets, MNDAs signed…short-form term sheets, long-form term sheets," and "whenever [Kusnetz] would ask for something, we would send it." (Ascher Dep. 284:1-20.)

MBG's production includes only an independent contractor agreement between Omnichannel and Northaven, the term sheet, and an MNDA between MBG and Northaven. Notably missing are documents and communications involving the exchange of trend files, logos, labels, samples, or any texts and emails in which documents or information were exchanged with Northaven or Mr. Kusnetz.

- Incomplete Text Exchanges

Plaintiffs' RFPs contain an explicit instruction requiring that "[t]ext messages through any application or platform, including but not limited to iMessage, X, Instagram, Whatsapp, Facebook, Snapchat, Tik Tok, Signal, SMS messaging, Slack, and Discord, responsive to the Requests shall be produced with all communications between and among the participants in communication on

---

[1] RFP Instruction No. 6 requires MBG to "organize and label the Documents or Communications to correspond with the categories in these requests." In addition to the other deficiencies, MBG failed to organize the documents produced and did not provide labels for any document indicating the category to which it was responsive.

# Katten

the day of the text message responsive to the Requests." A review of MBG's productions and Mr. Ascher's testimony reveals that several documents containing text messages are incomplete and contain obscured messages.

o   Patrick Clegg Text Exchange (MIRAMAR 2178)

MBG provided a screenshot of a text exchange between Patrick Clegg and Mr. Ascher, in which Mr. Ascher sent a screenshot of a LinkedIn post from Eva Platini-Hernandez describing Rag & Bone's Miramar collection. Mr. Clegg responded with "Is this our Miramar?" The screenshot cuts off the remaining messages and does not provide documentation of Mr. Ascher's response or any subsequent messages. When asked about this text exchange, Mr. Ascher testified that he did not remember the date of the text message and did not remember whether he responded to Mr. Clegg's text. (Ascher Dep. 242:2-245:4.)

o   Perry Leonard Text Exchange (MIRAMAR 2396/ MIRAMAR 2228)

MBG provided screenshots of two text exchanges between Perry Leonard and Mr. Ascher. Both images appear to be cropped to conceal Mr. Ascher's responses to Mr. Leonard's messages and any subsequent messages between the parties. Mr. Ascher's deposition testimony provided inconsistent and conflicting stories regarding the text messages and the circumstances surrounding the exchange. Again, Mr. Ascher testified that he did know what the messages before and after the text contained. (Ascher Dep. 237:22-238:4; 241:2-5.) He also testified that these were not his first discussions with Mr. Leonard regarding Rag & Bone, and his first communication was "probably a text." (Ascher Dep. 227:20-228:21.)

o   Neal Kuznetz Text Exchange (MIRAMAR 1726)

MBG provided an image of a text conversation between Mr. Kusnetz and Mr. Ascher, in which Mr. Ascher tells Mr. Kusnetz he "need[s] [his] help with something." Mr. Ascher then sent Mr. Kusnetz a link to a Rag & Bone Instagram post promoting their Miramar collection. The next message from Mr. Ascher is obscured in the produced image, but appeared to be "Don't forget the email." After initially denying that his next (obscured) text said as much, Mr. Ascher was forced to admit that it did, but only after being asked to search his phone for the text during the deposition. In this unproduced portion of the exchange, Mr. Kusnetz then responded, "Will do." (Ascher Dep. 290:8-291:25.) About an hour after this text exchange, Mr. Kusnetz sent Mr. Ascher an oddly specific email professing concern about Rag & Bone's Miramar collection—the email Mr. Ascher needed "help" with and which Mr. Kusnetz was not to "forget." (Ascher Dep. 292:19-293:1.)

While it is troubling (and potentially sanctionable) that Mr. Ascher's texts reflect an obvious attempt to manufacture evidence in MBG's favor by conjuring a "lost deal" from whole cloth—among other things, Mr. Ascher's testimony indicates he and Mr. Kusnetz continued to exchange materials relevant to the "deal" into December, although those texts were also not produced—this also suggests that Mr. Ascher's search was *at least* negligent and possibly performed in bad faith. MBG's failure to produce these texts and Mr. Ascher's initial denial of

# Katten

their contents (after having just searched for them days earlier) raises a reasonable inference of an intent to selectively produce and/or distort evidence in MBG's favor.[2]

### 3. Unreliability of MBG's Document Custodian

Given Mr. Ascher's demonstrated inability to perform a comprehensive search for documents and his evident intention to skew or conceal evidence in his possession, greater attorney involvement in the collection of documents is required. As is reasonable and customary in document collections, we request you and your law firm personally conduct a reliable and comprehensive search for responsive documents by: (1) reviewing Mr. Ascher's Gmail account and identifying all responsive emails; (2) imaging Mr. Ascher's phone to collect and review all text messages for responsive information; (3) conducting an on-site document collection at MBG's offices and any other locations where responsive documents may be stored; and (4) searching and reviewing any additional locations where responsive documents may be located.

### 4. Failure to Provide ESI in the Proper Format

As is customary in federal litigation, Plaintiffs' RFPs included detailed instructions requiring that "[a]ll Documents or Communications shall be produced as they are kept in the usual course of business in their original folders, binders, covers, and containers or facsimile thereof, or, with respect to electronically-stored information ("ESI"), in either native file ("native") or single-page 300 dpi-resolution group IV TIF ("tiff") format as specified below." (RFPs Instructions ¶ 6.) The Instructions further required that all ESI "be produced in tiff format with full text extracts and the following fields of metadata (where available): (a) Custodian name; (b) Author ("From"); (c) Recipient; (d) CC and BCC fields; (e) Subject/Title; (f) Date and time created; (g) Date and time last modified; (h) Date and time sent (for emails); (i) File name; (j) Source device; and (k) File path/location." (RFPs Instructions ¶ 8.) Additionally, "[a]ll Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced." (RFPs Instructions ¶ 9.)

MBG has failed to comply with these Instructions. The documents produced by MBG were not produced with the required metadata fields, were not produced in their original organizational format, and MBG has failed to produce spreadsheets and other documents generated or stored by such software in their native format. These deficiencies undermine Plaintiffs' ability to properly review, authenticate, and utilize MBG's productions.[3] Moreover, Mr. Ascher's clear lack of

---

[2]   Unlike the Kusnetz text, the images of the text exchanges with Leonard and Clegg do not include the message bar, suggesting an effort to hide the subsequent Kusnetz messages by purposefully cropping the screenshot.

[3]   For example, MBG's purported responses to RFP Request 2 reflecting keyword searches do not reflect the date on which the searches were performed. *See, e.g.,* MIRAMAR 1651 (Google search results for "Men's Miramar jeans"); MIRAMAR 1665 (Google search results for "miramar denim"); MIRAMAR 1670 (Google search results for "miramar sweatshirt")

# Katten

diligence and reliability as a document custodian heightens the need for metadata, as Plaintiffs will need that information to forensically evaluate the contents of the document production, including texts, emails, and other documents. Accordingly, please produce MBG's document production in the appropriate and requested format, as the Court ordered, by no later than March 20, 2026, and provide any supplemental productions in that format as well.

### 5.   Additional Individuals Whose Files Must Be Searched for Responsive Information

Mr. Ascher's deposition testimony reveals that numerous other MBG employees, agents, and representatives may have responsive documents in their possession. Document requests directed to MBG, an entity, are not limited to Mr. Ascher. Please confirm that the following employees, officers, and agents of MBG were asked to search for documents responsive to Plaintiffs' RFPs, or if they were not, please confirm that you will conduct a search of their documents:

- **Jennifer Allen (Vice President of Global Brand Development):** Mr. Ascher testified that Jennifer Allen is MBG's only employee other than himself and is Vice President of Global Brand Development. (Ascher Dep. 16:2-6.) She has authority to control the content on the miramar.shop website (Ascher Dep. 30:2-6; 167:19-25), makes pricing changes on the websites (Ascher Dep. 60:9-14), and may have made substantive changes to the miramar.shop website. (Ascher Dep. 310:10-15.). As an employee of MBG, Ms. Allen would likely have information responsive to all RFPs, including documents and communications about website content, product listings, and pricing changes.

- **Wendy Allen (Executive Vice President for Communications):** Wendy Allen serves as Executive Vice President for Communications and is listed as MBG's contact for press inquiries. (Ascher Dep. 307:21-308:4.) She makes pricing and content changes to miramar.shop (Ascher Dep. 29:12-19; 60:9-13; 310:10-15), is on the MBG board (Ascher Dep. 270:16-17), and is responsible for MBG press releases. (Ascher Dep. 307:5 – 308:4.) As a board member and MBG's communications director, Ms. Allen would have information responsive to all RFPs, including communications regarding press releases, marketing materials, and communications with third parties about the Rag & Bone dispute.

- **Christopher "Sinjin" Smith (Co-founder / Shadow Shareholder / Board Member):** Sinjin Smith is a "shadow shareholder" with a right to 5% of proceeds if the company is

---

MIRAMAR001669-1670 (Google search results for "miramar sweatshirt" and "miramar tshirts"); MIRAMAR 1677 (Google AI results describing Miramar Apparel); MIRAMAR 1695 (Poshmark search results for "Miramar"); MIRAMAR 1697 (Ebay search results for "Miramar"); MIRAMAR 1702 (Google search results for undisclosed search); MIRAMAR 1707 (Google search results for "Miramar stores"); MIRAMAR 1715 (Google search results for "Miramar clothing"); MIRAMAR 1725 (Google search results for "Miramar clothing."). Additionally, the productions appear to be obscured and do not provide the complete results generated as a result of the search. Plaintiffs seek confirmation of the dates and times those searches were performed, and evidence sufficient to show the entirety of the results generated.

# Katten

sold, is co-founder of MBG, and sits on the MBG board. (Ascher Dep. 16:17-18:7; 122: 20-24; 270:17). As a board member and founder of MBG, Mr. Smith would have information responsive to all RFPs, including MBG's licenses, products, communications about confusion regarding Rag & Bone and business communications with Ascher about MBG products.

- **Nayem (Website Agent):** Contractor/licensee in Bangladesh who helps manage the miramar.shop website and is involved in product and pricing decisions. (Ascher Dep. 30:2-14; 60:9-14; 136:19-24; 162:10-18.) Nayem would have documents responsive to the RFPs, including information about licensing agreements, website content and product listings.

- **Mehrose (Amazon Agent):** Partner in Calgary who "runs our Amazon business for us." (Ascher Dep. 60:16-25; 162:19-20.) Mehrose will likely have responsive documents about licensing agreements, product offerings, and price changes.

- **Malik (Manufacturing Agent):** Contractor/licensee in Pakistan who manufactures inflatable products, nylon swimwear, and fleece. (Ascher Dep. 133:6-8; 162:23-163:1; 166:13-24.) He may possess manufacturing and licensing agreements, product offerings, and price changes.

## 6.  Failure to Respond to Non-Party Subpoena Requests for Production of Documents

On February 17, 2026, Plaintiffs served Subpoenas on Susan Valero, Greg Lorber, and Neal Kusnetz pursuant to Federal Rule of Civil Procedure 45, requiring the production of documents and communications between the witnesses and MBG concerning the Rag & Bone Miramar collection or MBG's MIRAMAR Marks.

Plaintiffs are in receipt of your objection to producing documents in connection with the subpoenas to Valero, Kusnetz, and Lorber. However, during Ms. Valero's deposition on March 10, 2026, when asked whether she had ever seen the subpoena, or was ever asked to produce documents and communications between her and MBG concerning Rag & Bone's Miramar Collection or the MIRAMAR Marks, Ms. Valero testified "No." (Valero Dep. 19:24-22:6.) In response to this question, you objected pursuant to MBG's written objections, including the fact that MBG had produced these documents. (Valero Dep. 19:17-22:1.)

To be clear, the Court *ordered the production of documents* from these non-parties. (ECF No. 69 at 1.) Your objection is entirely without merit because the Court already authorized the requested discovery. Moreover, since Ms. Valero (and likely Messrs. Kusnetz and Lorber as well) had never seen the subpoenas, much less searched for documents, it is unknowable whether they have responsive documents separate and apart from MBG or whether such a search would impose an undue burden. And given MBG's failure to adequately search for documents, the need for non-party productions of documents is that much more important.

6

# Katten

\*          \*          \*          \*          \*

The deficiencies highlighted in this letter are not only violations of MBG's general discovery obligations, but also clear violations of the Court's expedited discovery order. Accordingly, Plaintiffs request that you (1) confirm whether you will comply with these demands within 48 hours; and (2) produce all responsive documents in the appropriate format following a diligent search from MBG and non-parties alike by March 20, 2026. Failure to respond will be construed as a refusal to comply and Plaintiffs will seek judicial intervention if necessary.

Sincerely,

*/s/ Mark Ciani*

Mark Ciani