UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rag & Bone Holdings, LLC and RB
Topco Sagl,

          Plaintiffs,

       v.

Miramar Brands Group, Inc.,

          Defendant.

Case No. 1:25-cv-09937-LGS

### Defendant's Response to Court Orders

In its recent Orders addressing letters from Plaintiffs (*see* ECF Nos. 94 and 98-99), the Court has required responses by April 8, 2026. *See* ECF No. 95 at 1; ECF No. 102 at 2. Defendant Miramar Brands Group, Inc. ("MBG") responds hereinbelow, as follows.

### No Subpoena Should Be Quashed

In their first letter (*see* ECF No. 94), Plaintiffs propose that three of their corporate executives—that is, Yehuda Shmidman, Gregg Donnenfield, and Stanley Silverstein—should be excused from appearing and testifying (via served subpoenas) at the April 13, 2026 hearing. *See* ECF No. 69 at 3 (ordering the "evidentiary hearing relating to Plaintiffs' motion for a preliminary injunction will be conducted on April 13, 2026"). Each of these individuals likely has unique personal knowledge that is essential to Defendant MBG being able to ***fairly and***

1

*effectively defend itself* from Plaintiffs' allegations in this action, including particularly the allegations set forth in Plaintiffs' request for the ***extraordinary*** relief requested—that is, an unmerited preliminary injunction.

Mr. Donnenfeld is the signatory for all of the representations made to the U.S. Trademark Office by Plaintiff RB Topco Sagl ("RB Topco") in connection with its ***rejected*** June 2025 application to register a proposed trademark using MBG's already-registered and incontestable MIRAMAR brand name, and he is the recipient of the responsive communications from the Trademark Office, including as follows:

**June 9, 2025**:  Donnenfeld representing that Plaintiffs had not yet used MIRAMAR as a trademark, but merely "had a bona fide intention to use the mark in commerce as of the application filing date" (*see* **Exhibit A**, attached herewith);

**June 9, 2025**:  Donnenfeld representing that "to the best of the signatory's knowledge and belief, no other persons [such as MBG] . . . have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive" (*see id.*);

**October 30, 2025**:  Donnenfeld receiving the rejection by the Trademark Office, including the conclusion that "consumers are ***likely to be confused and mistakenly believe that the products and services originate from a common source***.  Therefore, registration must be refused" (*see* **Exhibit B**, attached herewith) (emphasis added);

**February 25, 2026**:  Donnenfeld submitting Plaintiffs' request "that the objection by the Trademark Office be suspended pending the outcome of [this] litigation" (*see* **Exhibit C**, attached herewith); and

**February 26, 2026**: Donnenfeld receiving the notice from the Trademark Office that its rejection of Plaintiffs' application "will be made final once this application is removed from suspension, unless a new issue arises" (*see* **Exhibit D**, attached herewith).

Mr. Donnenfeld also received (but did not respond to) MBG's cease and desist letter dated August 28, 2025. *See* **Exhibit E** (attached herewith). Both MBG and this Court would benefit from Mr. Donnenfeld's personal knowledge and live testimony at the April 13, 2026 hearing, and there is no undue burden because he is a party-executive and locally present in New York.[1]

Similarly, both Mr. Shmidman and Mr. Silverstein are local executives of Plaintiffs, and both received MBG's cease and desist letter dated October 27, 2026, but never responded. *See* **Exhibit F** (attached herewith). Mr. Shmidman, in particular, was very involved in Plaintiffs' efforts to promote it's "new" MIRAMAR brand online, as shown in multiple "posts" including his commentary. *See, e.g.,* **Exhibit G** (attached herewith). Mr. Silverstein, in particular, made the following statement in an email dated September 14, 2025: "[P]eople here feel quite strongly that the rag&bone usage is perfectly appropriate." *See* **Exhibit H**

---

[1] Plaintiffs criticize MBG for not pursuing pre-hearing discovery or depositions, even suggesting the absurd notion that subpoenas create undue "stress" for these high-level executives *who undoubtedly are responsible for the decision to sue Defendant MBG and seek a meritless preliminary injunction*. Unlike Plaintiffs apparently, however, MBG does not have an unlimited litigation budget. Because this Court scheduled a live hearing, MBG has no need to question the key witnesses *before* the hearing—that is, doing *twice* what it need only do once.

(attached herewith).  Both MBG and this Court would benefit from these witnesses' personal knowledge and live testimony at the April 13, 2026 hearing, and there is no undue burden because he is a party-executive and locally present in New York.

Based on the foregoing, Defendant MBG respectfully requests that this Court should allow and enforce, if necessary, the subpoenas issued for testimony at the April 13, 2026 hearing from Yehuda Shmidman, Gregg Donnenfield, and Stanley Silverstein.

### Plaintiffs' Proposed Evidentiary Sanction Is Not Justified

In their second letter (*see* ECF Nos. 98-99), Plaintiffs assert incorrectly that Defendant MBG has "attempt[ed] to manufacture evidence," and seek "an adverse inference that MBG has suffered no loss of business opportunities as a result of Plaintiffs' use of the term 'Miramar.'"  No such inference would be appropriate or justified, however.

Plaintiffs first attack the sworn testimony of Neal Kusnetz, who in January 2026 submitted his sworn declaration to this Court including representing that (a) he is "a long-time apparel and brand senior executive with experience in brand development, management, licensing, product development, and retail distribution;" (b) he recently "started seeing widespread use of the name 'Miramar' as a brand by Rag & Bone in digital advertising, email campaigns, social media,

press articles, and retail displays" which "created the impression that Rag & Bone either owned or controlled the MIRAMAR® brand, or had acquired rights superior to those held by MBG;" (c) he has "observed growing marketplace confusion" whereby "[r]etailers and consumers now appear to associate the MIRAMAR name with Rag & Bone rather than with MBG;" (d) he "could not proceed with the MBG transaction until the trademark issue was resolved" resulting in "a delay of a fully-executed term sheet and disruption to ongoing business planning and investment timelines;" and (e) "Rag & Bone's conduct is causing real commercial harm to MBG's business by interfering with an otherwise viable licensing transaction" and "from marketplace confusion caused by Rag & Bone's extensive, unauthorized use of the MIRAMAR trademark and brand." *See* ECF No. 54-15.

Plaintiffs suggest, without any evidence or admission of "manufacturing evidence" (or anything akin thereto), that what Mr. Kusnetz stated in his sworn declaration is untruthful. Based on his declaration and deposition testimony, the Court can judge for itself whether Plaintiffs' speculation and conjecture is accurate that Mr. Kusnetz he would jeopardize his personal integrity and his decades of professional credibility by making misrepresentations in a sworn declaration.[2]

---

[2] The cited deposition transcript reveals that Plaintiffs' assertion is completely false that Mr. Kusnetz "conceded" that he "manufacture[d] support for [MBG's] litigation position." Nothing of the sort is stated, implied, or even suggested. Concerning Plaintiffs' attempt to mischaracterize Mr. Kusnetz's September 2025 email, obviously he sent the email expressing his unclear understanding of the Rag

Plaintiffs next attack the sworn testimony of Greg Lorber, who in January 2026 also submitted a sworn declaration to this Court including representing that (a) he was "in discussions with [MBG] regarding a potential license involving its MIRAMAR® brand;" (b) he thought there was "credibility associated with MBG's then-existing or anticipated deal with Rag & Bone" which "would materially enhance my ability to pursue such opportunities at scale and to secure commercial partners and distribution;" and (c) that "[b]ecause of the present uncertainty [with Plaintiffs] we cannot finalize the license." *See* ECF No. 54-17.

Plaintiffs again suggest, without any evidence or admission of "manufacturing evidence," that what Mr. Lorber stated in his sworn declaration is untruthful. Although Mr. Lorber may not be present at the hearing, the Court can judge for itself whether Plaintiffs' speculation and conjecture is accurate that he would jeopardize his professional credibility by making misrepresentations in a sworn declaration.

Finally, Plaintiffs' requested "adverse inference" is not even germane to the current issues in dispute. Denying Plaintiffs' request for a preliminary injunction

---

& Bone Instagram post and what Mr. Ascher told him on their call, as he did not know if what Mr. Ascher told him was accurate, or if Mr. Ascher was actually doing a collaboration with Rag & Bone, or if it was an infringement. Mr. Kusnetz sent the email to tell Mr. Ascher's Board of Directors that he was not moving forward until the situation was cleared up, and that further discussion was necessary.

does not depend on whether "MBG has suffered no loss of business opportunities as a result of Plaintiffs' use of the term 'Miramar.'" That issue should be left for the next motion—that is, MBG's motion requesting a preliminary injunction to enjoin further trademark infringement by Rag & Bone and the resulting irreparable harm to MBG, the longstanding and incontestable owner of the U.S. trademark registration for the MIRAMAR® brand. MBG's motion for preliminary injunction should be presented in the co-pending case MBG filed in California, as this Court lacks personal jurisdiction over MBG. *See* ECF Nos. 64, 79. Until then, it matters not how and to what extent MBG has been harmed by the infringement of its trademarks and trademark registrations. Therefore, even if it was justified—which it is not—the proposed "adverse inference" is inapposite to any issue for hearing at this time.

For each and all of the above reasons, Defendant MBG respectfully requests that this Court should deny Plaintiffs' letter motion for evidentiary sanctions.

Dated: April 8, 2026                              Respectfully submitted,

/s/ Stephen M. Lobbin
Stephen M. Lobbin (CA-SBN 181195)
*\* admitted in SDNY*
sml@smlavvocati.com
**SML Avvocati P.C.**
4640 Cass Street #90142
San Diego, California 92109
Tel: 949.636.1391

Attorneys for Defendant

7

## CERTIFICATE OF SERVICE

I hereby certify that, on April 8, 2026, a true and correct copy of the above document was provided to all counsel of record through the Court's CM/ECF system.

/s/ Stephen M. Lobbin