UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAG & BONE HOLDINGS, LLC AND RB TOPCO SAGL, Plaintiffs, -against- MIRAMAR BRANDS GROUP, INC., Defendant. | 25 Civ. 9937 (LGS) **OPINION & ORDER** |

LORNA G. SCHOFIELD, District Judge:

Plaintiffs Rag & Bone Holdings, LLC ("Rag & Bone") and its Swiss affiliate RB Topco SAGL ("Topco") bring this action against Defendant Miramar Brands Group, Inc. ("MBG"). The Complaint asserts the following claims against MBG: (1) declaratory judgment that Plaintiffs' use of "Miramar" does not constitute trademark infringement or otherwise violate the Lanham Act, 15 U.S.C. § 1051, *et seq.*, (2) declaratory judgment that Plaintiffs' use of "Miramar" does not violate New York State's General Business Law Article 24 and does not constitute unfair competition and (3) tortious interference with Rag & Bone's business relations. The Complaint seeks injunctive relief, monetary damages and attorney's fees. MBG moves to dismiss the Complaint for lack of personal jurisdiction and improper venue. For the following reasons, the motion is denied.

## I. BACKGROUND

The following facts are only those relevant to jurisdiction and venue. They are taken from the Complaint, the documents it incorporates by reference, *see Pearson v. Gesner*, 125 F.4th 400, 406 (2d Cir. 2025), and declarations and their exhibits related to jurisdictional facts, *see Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022).

**A. Rag & Bone and Its Use of "Miramar"**

Plaintiff Rag & Bone was founded in New York City in 2002 and has its headquarters in New York City. Topco owns intellectual property for the RAG & BONE® mark and licenses the mark to Rag & Bone. For at least thirteen years prior to the date of the Complaint (November 30, 2025), Rag & Bone has been selling the "Miramar" comfort wear line under the RAG & BONE® house mark throughout the country, including in the State of New York ("New York"). The Rag & Bone Miramar collection (the "Collection") features hyper-realistic prints or patterns of denim on comfort wear apparel such as pants. These items are among Rag & Bone's top sellers, generating a significant portion of the company's annual revenue. Rag & Bone sells and promotes the Collection through brick-and-mortar stores, boutiques, department stores, some of which are located in New York, and through e-commerce channels whose customers include those located in New York. Rag & Bone's retail business partners include Nordstrom, Inc. ("Nordstrom"); Amazon; Klaviyo, Inc. ("Klaviyo") and Meta Platforms, Inc. ("Meta"), all of which also conduct business in New York.

**B. MBG and Its Use of "Miramar"**

MBG is a brand management, marketing and licensing company incorporated and headquartered in California. MBG is the registered owner of the MIRAMAR trademark, which MBG uses in connection with its sale of volleyballs and volleyball-related beachwear. MBG sells its products worldwide, including in New York.

**C. Letters Between the Parties**

On August 28, 2025, MBG sent a cease-and-desist letter to Rag & Bone in New York in which MBG claimed exclusive rights to the MIRAMAR trademark and demanded Rag & Bone stop using the name and remove the Collection from all sales and marketing outlets, which

included those in New York. Rag & Bone responded on September 9, 2025, disputing that MBG has any good faith legal basis to compel Rag & Bone to stop using the term "Miramar," and arguing that Rag & Bone is entitled to use the term and MBG has no valid claim of infringement.

On October 13, 2025, MBG's counsel in New York sent a letter to Rag & Bone's counsel in New York, disputing Rag & Bone's arguments, reiterating MBG's cease-and-desist demands and adding: "[I]f Rag & Bone would rather continue using the MIRAMAR mark, our client may be willing to negotiate a licensing arrangement instead." On October 23, 2025, Rag & Bone's counsel in New York responded to MBG's counsel in New York, further disputing any infringement and ignoring MBG's invitation to negotiate a licensing agreement.

On November 11, 2025, MBG's counsel in New York emailed Rag & Bone's counsel in New York, referencing a prior phone conversation, reasserting MBG's rights and enclosing "a term sheet approved by the Board of Directors" of MBG addressed to Topco as Licensee. Pursuant to the term sheet, MBG would provide a non-exclusive license to use the MIRAMAR designation for ten years for an up-front fee of US $10 million, plus royalties of 10% of wholesale sales revenue or 7% of retail sales revenue, with an annual guarantee of $3 million per year, escalating 5% each year during the ten-year term of the license, and a requirement of $50 million in sales by year three. The term sheet included an option to "offer to acquire the Miramar Marks [at year five] for six (6) times trailing-twelve-month EBITDA . . . subject to a minimum valuation of US$300 million." On November 21, 2025, MBG sent "a formal and final executive notification," insisting that Rag & Bone immediately discontinue all Miramar sales and noting: "Our intention to resolve this efficiently remains."

**D. MBG's Takedowns and Alleged Interference**

Meanwhile, MBG sent takedown notices to Rag & Bone's business partners. Starting October 25, 2025, MBG sent "dozens, and perhaps hundreds," of takedown notices to Amazon and Meta, requesting the removal of listings and advertisements relating to the Collection, which included those accessible to customers in New York. Amazon and Meta complied with those takedown demands.

On November 13, 2025, two days after sending the term sheet, MBG sent a letter to Klaviyo, Rag & Bone's email marketing partner, copying MBG's counsel in New York among others, and demanding discontinuation of Miramar text and email marketing campaigns. On November 20, 2025, MBG wrote to executives of Nordstrom, one of Rag & Bone's largest retail partners, with similar demands, again copying MBG's New York counsel among others. On November 24, 2025, MBG wrote to Saks Global ("Saks") in New York City, demanding that Saks cease selling MIRAMAR-labeled goods and cease all digital use of the term, again copying MBG's New York counsel.

On November 26, 2025, MBG issued a press release concerning the Nonfinal Office Action relating to Topco's trademark application. The press release quotes Stephen Ascher, MBG's CEO, characterizing the Nonfinal Office Action as a "complete and unambiguous rejection of Rag & Bone's claim to the MIRAMAR mark" and includes photos of Rag & Bone's Miramar pop-up store in New York City. The press release concludes with a demand for the "immediate removal, discontinuation, and destruction of all MIRAMAR-labeled Rag & Bone products" and a statement that MBG is "escalating enforcement in global Brand Registries and at U.S. Customs and Border Protection."

### E. Procedural History

Plaintiffs filed the Complaint on November 30, 2025. On December 1, 2025, Plaintiffs filed an application for a temporary restraining order and a preliminary injunction. After a show cause hearing on December 3, 2025, a temporary restraining order was granted, to remain in effect until a decision on Plaintiffs' pending motion for a preliminary injunction.

MBG's New York counsel moved to withdraw on December 9, 2025. The motion to withdraw was granted on December 17, 2025. On December 22, 2025, MBG's California counsel filed a notice of appearance in this case. On January 4, 2026, MBG filed a complaint against Rag & Bone in the Central District of California, alleging trademark infringement under the Lanham Act and unfair competition under California law. On May 26, 2026, Rag & Bone moved to stay the California action pending resolution of this action. On June 8, 2026, MBG filed a first amended complaint in the California case, naming additional defendants, including several of Rag & Bone's business partners. On June 8, 2026, MBG filed a motion for a preliminary injunction in that case to enjoin Rag & Bone from infringing MBG's rights in the MIRAMAR® brand. On July 28, 2026, the California court heard oral argument on Rag & Bone's motion to stay. On July 30, 2026, the California court granted Rag & Bone's motion to stay and denied MBG's motion for preliminary injunction as moot.

## II. STANDARD

### A. Dismissal for Lack of Personal Jurisdiction Under Rule 12(b)(2)

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff "bears the burden of showing that the district court ha[s] personal jurisdiction" over the defendant.[1]

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

*Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 53 (2d Cir. 2021). Courts "construe the pleadings and affidavits in the light most favorable to [the plaintiff] and resolve all doubts in its favor." *Nat'l Union Fire Ins. Co. of Pittsburgh v. UPS Supply Chain Sols., Inc.*, 74 F.4th 66, 71 (2d Cir. 2023). However, courts will not resolve "argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sep. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013); *accord WSP USA Bldgs., Inc. v. AECOM Ltd.*, No. 23 Civ. 2858, 2025 WL 2606886, at *2 (S.D.N.Y. Sep. 9, 2025).

"To determine whether jurisdiction exists over a non-domiciliary, [courts] first consider whether the state's long-arm statute provides a statutory basis for jurisdiction and, if so, whether exercising personal jurisdiction would comport with due process." *Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69, 73 (2d Cir. 2023). In New York, CPLR § 302 governs the reach of long-arm personal jurisdiction over an out-of-state defendant. "In the context of personal jurisdiction, due process demands that each defendant over whom a court exercises jurisdiction have some minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 269 (2d Cir. 2023).

**B. Dismissal for Improper Venue Under Rule 12(b)(3)**

Venue in the federal courts is governed by 28 U.S.C. § 1391(b). As relevant here, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). If venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "Whether dismissal or transfer is appropriate lies within the sound discretion

of the district court." *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993); *accord Doe 2 v. Congregation of the Sacred Hearts of Jesus & Mary*, No. 24-2940, 2026 WL 239045, at *1 (2d Cir. Jan. 29, 2026) (summary order).

Even if venue is proper, a district court may transfer an action to a judicial district where it might have been brought, "[f]or the convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). When deciding a motion to transfer, a court may consider: "(1) plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *NLRB v. Universal Smart Conts., LLC*, 166 F.4th 304, 316 (2d Cir. 2026). Courts in this district sometimes consider two additional factors: "(8) the forum's familiarity with the governing law; and (9) trial efficiency and the interests of justice." *Parness v. Eplus, Inc.*, No. 20 Civ. 7266, 2021 WL 827770, at *2 (S.D.N.Y. Mar. 4, 2021); *accord Skatteforvaltningen v. 470 S. Ocean Boulevard Tr.*, No. 25 Civ. 1498, 2026 WL 2123271, at *5 (S.D.N.Y. July 23, 2026). "No one factor is dispositive and the relative weight of each factor depends on the particular circumstances of the case." *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 292 (S.D.N.Y. 2018). "District courts have broad discretion in making determinations of convenience under Section 1404(a)." *Corley v. United States*, 11 F.4th 79, 89 (2d Cir. 2021).

## III. DISCUSSION

### A. Personal Jurisdiction

The Complaint alleges that the Court has personal jurisdiction because: (1) Defendant "engaged in tortious activity both in and out of the State of New York, causing injury in New

York County" and (2) Defendant "transacts business in New York County and that business has a substantial nexus to Plaintiffs' claims." The Motion to Dismiss under Rule 12(b)(2) is denied on the second basis. Because this is sufficient to confer jurisdiction, this Opinion does not address the first basis.

**1. Transacting Business Under CPLR § 302(a)(1)**

The Court has personal jurisdiction over Defendant pursuant to the transacting business provision of New York's long-arm statute, CPLR § 302(a)(1). Section 302(a)(1) states that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." Under the statute, "the jurisdictional inquiry is twofold: under the first prong the defendant must have conducted sufficient activities to have transacted business in the state, and under the second prong, the claims must arise from the transactions." *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 276-77 (2d Cir. 2024), *cert. denied sub nom. Zembrka v. Am. Girl, LLC.*, 145 S. Ct. 1130 (2025).

**i. Purposeful Activity**

Under the first prong, "[t]ransacting business under § 302(a)(1) means purposeful activity -- some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Am. Girl*, 118 F.4th at 277. Purposeful activity directed at New York may amount to transacting business there, "even [if] the defendant never enters New York." *Id.* at 276-77 (finding transaction of business in New York where the defendant accepted orders bound for New York, sent confirmatory emails with commitments to ship to New York and accepted payment from customers with New York addresses). "The overriding criterion necessary to establish a

transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." *Northwell Health, Inc. v. Grp. Hospitalization & Med. Servs., Inc.*, No. 25-192, 2026 WL 2035965, at *6 (2d Cir. July 15, 2026). "The touchstone for jurisdiction under New York's long-arm statute, then, is the intent to reach the forum." *Id.* "An act is purposeful or intentional if it was undertaken to invoke the benefits and protections of New York's laws." *Id.*

The Complaint alleges that MBG and its New York counsel sent cease-and-desist letters to Rag & Bone in New York and to Rag & Bone's New York counsel in New York. Rag & Bone denied any infringement. Both parties' lawyers in New York debated the merits of their respective positions in a series of letters, and the New York lawyers spoke at least once by telephone. MBG suggested a business arrangement by which MBG would license to Rag & Bone the right to use the term Miramar for ten years worldwide, for a substantial sum. "Importantly for our purposes, purposeful activities conducted in New York by an agent may be attributed to the principal." *Quest Trading, LLC v. Com. & Indus. Ins. Co.*, No. 16 Civ. 735, 2017 WL 946421, at *5 (S.D.N.Y. Feb. 15, 2017) (referring to the purposes of assessing personal jurisdiction). When Rag & Bone failed to respond to MBG's licensing overtures, MBG increased the pressure by demanding that Rag & Bone's email marketing partner, Klaviyo, and two of its retail partners, Saks (in New York) and Nordstrom, discontinue all sales and marketing of the Collection. This followed successful similar take-down demands of Amazon and Meta.

These facts show that MBG, through its conduct in New York, "purposefully sought to establish a substantial ongoing business relationship with [Plaintiffs], and thus demonstrate a clear intent by [MBG] to engage purposefully in business activities within the meaning of CPLR 302(a)(1)." *See Northwell Health*, 2026 WL 2035965, at *7. Although being physically present

in New York is not required, the fact that Defendant's representatives were based in New York and discussing their grievances and a possible resolution through a long-term business relationship with Rag & Bone, a New York entity, adds to the New York contacts sufficient to confer jurisdiction. *See State v. Vayu, Inc.*, 206 N.E.3d 1236, 1240 (N.Y. 2023).

While sending a cease-and-desist letter into New York is not alone sufficient to establish personal jurisdiction, combining such demands with a "persistent campaign" of "intertwining legal threats with solicitation of investments," including by sending cease-and-desist letters and making efforts to negotiate a license agreement with a retailer in New York, "constitutes business transacted in New York under CPLR § 302(a)(1)." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1109-10 (2d Cir. 1997); *see Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 623-24 (S.D.N.Y. 2014) (applying *PDK Labs* and treating a New York-based agent's "multiple contacts with a plaintiff" as transacting business under CPLR § 302(a)(1), while noting that a cease-and-desist letter alone is insufficient), *aff'd*, 833 F.3d 74 (2d Cir. 2016); *Quest Trading*, 2017 WL 946421, at *6 (explaining that a New York attorney's pursuing coverage under an insurance policy constituted transacting business in New York, and citing *PDK Labs* for the proposition that an attorney's cease-and-desist letter combined with attempts to persuade the plaintiff to invest in the defendant's business established jurisdiction under CPLR § 302(a)(1)).

**ii. Articulable Nexus**

Under the second prong, "a claim arises from a particular transaction when there is some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted." *Yehuda v. Zuchaer*, No. 22-1972, 2023 WL 8888584, at *2 (2d Cir. Dec. 26, 2023) (summary order); *accord WSP USA Bldgs.*, 2025 WL 2606886, at *3. "Although the inquiry under the statute is

relatively permissive . . . not every conceivable connection to a New York transaction is substantial enough to confer jurisdiction. An articulable nexus or substantial relationship exists where at least one element of the cause of action arises from the New York contacts." *Yehuda*, 2023 WL 8888584, at *2; *accord WSP USA Bldgs.*, 2025 WL 2606886, at *3.

Here, the New York transaction -- Defendant's alleged campaign by MBG's New York attorneys to shut down Rag & Bone's sales and marketing of the Collection as a means to secure a long-term licensing agreement with Rag & Bone, a New York entity -- is the very conduct that gives rise to Rag & Bone's claims. The Complaint seeks a declaratory judgment of non-infringement by Rag & Bone, damages for Defendant's interference with Plaintiffs' business relations and an injunction to stop future interference. Accordingly, Plaintiffs have met their burden of showing that MBG transacted business in New York sufficient to confer personal jurisdiction under CPLR § 302(a)(1).

**2. Constitutional Due Process**

The exercise of personal jurisdiction over Defendant comports with due process. A plaintiff must establish "a statutory basis for jurisdiction" and that "exercising personal jurisdiction would comport with due process." *Peterson v. Bank Markazi*, 121 F.4th 983, 1002 (2d Cir. 2024). The due process analysis "has two parts of its own: minimum contacts and reasonableness." *Id.* at 1005.

**i. Minimum Contacts**

"To satisfy the minimum contacts requirement, the defendant must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State. At the same time, the plaintiff's claims must arise out of or relate to the defendant's contacts with the forum." *Id.* As discussed above, "[f]or the same reasons that [Defendant's] engagement

with New York satisfies § 302(a)(1), it also satisfies the minimum contacts requirement." *Am. Girl*, 118 F.4th at 279; *see also Dow Jones & Co., Inc. v. Perplexity AI, Inc.*, 797 F. Supp. 3d 305, 331 (S.D.N.Y. 2025) ("Generally, if a defendant meets the contacts requirement under the long-arm statute, it also meets the minimum contacts requirement under the constitutional analysis."); *accord Sony Music Ent. v. Univ. of S. Cal.*, No. 25 Civ. 2042, 2026 WL 96694, at *9 (S.D.N.Y. Jan. 13, 2026). Plaintiffs have met their burden of showing constitutionally sufficient contacts with New York.

**ii. Reasonableness**

The exercise of personal jurisdiction over Defendant is reasonable here. "Even when a defendant has sufficient contacts with the forum to support the exercise of personal jurisdiction, [the Court] must also determine whether the exercise of personal jurisdiction is reasonable under the Due Process Clause." *Peterson*, 121 F.4th at 1006. For this analysis, the Court considers five factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant;
>
> (2) the interests of the forum state in adjudicating the case;
>
> (3) the plaintiff's interest in obtaining convenient and effective relief;
>
> (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and
>
> (5) the shared interest of the states in furthering substantive social policies.

*Id.* "When the minimum contacts requirement has been satisfied, the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

Considering these five factors, exercising personal jurisdiction is reasonable. (1) The burden on MBG is limited because, as outlined in the Supplemental Declaration of Mark T.

Ciani in Opposition to Defendant's Motion to Dismiss, MBG conducts business in New York, lists New York as one of its locations and was represented by New York counsel when the dispute first arose. "[G]eneralized complaints of inconvenience arising from having to defend [it]self from suit in New York do not add up to a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 173 (2d Cir. 2010). (2) New York has an interest in adjudicating the case because the alleged interference took place in New York and affected Rag & Bone, a New York entity. *See id.* ("[A] state frequently has a manifest interest in providing effective means of redress for its residents."). (3) New York offers a means for Plaintiffs to obtain convenient and effective relief as Rag & Bone is based in New York. (4) Continuing the case in New York is more efficient than proceeding in another forum. The parties' dispute was first put before a court in this action. There are 135 entries on the docket, reflecting conferences, orders and motions. A temporary restraining order was issued on December 3, 2025, after a two-hour hearing on December 2, 2025. A preliminary injunction motion is pending after a six-hour evidentiary hearing on April 13, 2026. (5) The shared interest of the states in furthering substantive social policies is neutral and does not affect the analysis.

MBG relies on *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998), to argue that a trademark owner "should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement" and that "an offer for a license within a cease-and-desist letter does not somehow convert that letter into something more than it was already." This argument on the facts of this case is without merit. First, *Red Wing* is not binding on this Court. Second, it is factually distinct from *PDK Labs* and the instant case in which a "persistent campaign" of "intertwining

legal threats with solicitation of investments," including by sending cease-and-desist letters and making efforts to negotiate a license agreement with a retailer in New York, were a sufficient basis for personal jurisdiction. *See PDK Labs*, 103 F.3d at 1109-10.

Because the minimum contacts and reasonableness requirements are satisfied, exercising personal jurisdiction comports with constitutional due process.

### B. Venue

The Motion to Dismiss under Rule 12(b)(3) is denied because venue is proper. A rule 12(b)(3) motion to dismiss for improper venue allows for "dismissal only when venue is 'wrong' or 'improper.' Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013); *accord LGN Int'l, LLC v. Hylan Asset Mgmt., LLC*, No. 20 Civ. 3185, 2021 WL 3500909, at *2 (S.D.N.Y. Aug. 9, 2021). Under 28 U.S.C. § 1391(b)(2), a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Here, as discussed above, a substantial part of the events giving rise to the claims occurred in New York.

To the extent MBG requests a discretionary transfer under 28 U.S.C. §§ 1404(a) and 1406(a), "[f]or the convenience of the parties and witnesses" and "in the interest of justice," that request is denied. "Courts give a high degree of deference to the plaintiff's choice of forum." *Glob. Art Exhibitions, Inc. v. Kuhn & Bulow Italia Versicherungsmakler GmbH*, 607 F. Supp. 3d 421, 436 (S.D.N.Y. 2022). "Great deference is given when a plaintiff sues in its home forum." *Id.* "[T]he party requesting transfer carries the burden of making out a strong case for transfer." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010); *accord Stonegardens Advisory LLC v. DeepMedia.AI*, No. 24 Civ. 2178, 2024 WL 5047628, at *10

(S.D.N.Y. Dec. 9, 2024). The moving party must make a "clear and convincing" showing that transfer is proper. *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 114; *accord Stonegardens Advisory LLC*, 2024 WL 5047628, at *10.

Here, Plaintiffs sued in their home forum, and MBG has failed to make a clear and convincing showing for transfer. Considering the factors discussed *supra* in Section II.B, (1) Plaintiffs' choice of forum is New York, which weighs heavily in favor of keeping the case in New York; (2) the convenience of the witnesses leans slightly towards New York; while Defendant's witnesses are primarily in California, and Plaintiffs' witnesses are in New York, the lawyers who conducted the communications between the parties were on both sides based in New York; (3) the location of relevant documents and relative ease of access to proof is neutral given Plaintiffs' and Defendant's locations and the ease of exchanging electronic documents regardless of where they originated; (4) the convenience of the parties similarly favors neither side; (5) the locus of operative facts favors New York because that is where Plaintiffs' alleged infringement of MBG's marks originated and in part occurred, *see Kiss My Face Corp. v. Bunting*, No. 02 Civ. 2645, 2003 WL 22244587, at *3 (S.D.N.Y. Sep. 30, 2003) ("In actions alleging trademark infringement or unfair competition, courts in this district have held the locus of operative facts to be in the initially chosen forum if acts of infringement, dilution, or unfair competition occur in that forum."); (6) the availability of process to compel the attendance of unwilling witnesses favors neither side; (7) the relative means of the parties favors Defendant because it is relatively small compared to Plaintiffs; (8) the forum's familiarity with the governing law favors neither side and (9) trial efficiency and the interests of justice similarly favor New York given the proceedings to date in this forum, including entry of a temporary restraining order and the evidentiary hearing on the pending preliminary injunction motion.

Because "[n]o one factor is dispositive and the relative weight of each factor depends on the particular circumstances of the case," *Casey*, 338 F. Supp. 3d at 292, and "[d]istrict courts have broad discretion in making determinations of convenience under Section 1404(a)," *Corley*, 11 F.4th at 89; *accord Marshall v. Caudill*, No. 23 Civ. 1998, 2023 WL 5101565, at *2 (S.D.N.Y. Aug. 9, 2023), the motion to transfer is denied. Defendant has not shown by "clear and convincing" evidence that transfer would be proper, particularly given the "great deference" to Plaintiffs' choice of forum.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss is **DENIED**. The Clerk of Court is respectfully directed to close the motion at Dkt. 64.

Dated: August 12, 2026
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE