**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Rag & Bone Holdings, LLC and RB Topco Sagl,

Plaintiffs,

v.

Miramar Brands Group, Inc.,

Defendant.

Case No. 1:25-cv-09937-LGS

-----------------------------------------------

Miramar Brands Group, Inc.,

Counterclaimant,

v.

Rag & Bone Holdings, LLC, Guess?, Inc., WHP Global, LLC, Bloomingdale's, LLC, Nordstrom, Inc., Evereve, Inc., Revolve Group, Inc., URBN US Retail, LLC, BOP LLC, Rue Gilt Group, Inc. and Couponology, Inc.,

Counterdefendants.

---

**MIRAMAR's Notice And Motion For Preliminary Injunction**

PLEASE TAKE NOTICE that pursuant to Section III.A.3 of this Court's Individual Rules and Procedures for Civil Cases, Counterclaimant Miramar Brands Group, Inc. ("MIRAMAR") hereby will and does move this Court, before the Honorable Lorna G. Schofield, United States District Court Judge, Southern District of New York, at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York,

New York, for a preliminary injunction order prohibiting any further trademark infringement by Counterdefendant Rag & Bone Holdings, LLC ("Rag & Bone").[1]

## Introduction and Summary

This Court is quite familiar already with the background facts relevant to the merits of the trademark issues in dispute, and incorporated herein by this reference (and by the additional pinpoint references herein) are additional relevant facts evidenced in MIRAMAR's Verified Counterclaims ("VCC"). *See* Dkt. No. 144 (including Exhibits A-FF at Dkt. Nos. 144-1 through 144-32.[2]

The facts germane to this Motion for Preliminary Injunction are quite simple and straightforward. MIRAMAR is a small California company which ***for several decades*** has used in commerce, and licensed to others, many brands protected by registered and common law trademark rights. Among its trademark rights is the registered MIRAMAR® brand for apparel, which is the subject of rights including (a) incontestable U.S. Trademark Registration No. 3,891,117 ("the '117 Registration") for MIRAMAR® (stylized), and (b) incontestable U.S. Trademark Registration No. 3,891,118 ("the '118 Registration") for MIRAMAR®. Both of these registrations cover International Class 25

---

[1] MIRAMAR already included a request for a preliminary injunction in its prior briefing filed in May 2026. *See* Dkt. No. 128 at 25-28 ("[T]he only likelihood of success favors MBG, not Rag & Bone, which means that this Court should consider a preliminary injunction only in MBG's favor—*i.e.*, enjoining any further infringement by Rag & Bone of MBG's registered, incontestable MIRAMAR trademarks.").

[2] MIRAMAR already filed in this action many declarations attesting to actual trademark confusion and other facts demonstrating a likelihood of success on the merits of MIRAMAR's claims, as well as irreparable harm, balance of hardships, and the public interest compelling a preliminary injunction. *See, e.g.*, Dkt. No. 54-1 through 54-18.

for a broad assortment of apparel and clothing items, including "swimwear, tops, shirts, T-shirts, sweatshirts, tank tops, vests, blouses, coats, overcoats, suits, jackets, sports coats, sweaters, pullovers, jumpers, skirts, dresses, body suits, leotards, leggings, pants, trousers, sweatpants, shorts, gloves, socks, underwear, and belts; headwear, namely, caps, hats, and visors; footwear, namely, shoes and sandals, sleepwear, athletic uniforms, in Class 25." *See* Dkt. No. 144-2 and 144-3 (VCC Exs. B-C).

MIRAMAR also owns trademark rights in and to the MIRAMAR name as used in connection with its other goods and services, including but not limited to brand licensing services. Without license or permission from MIRAMAR (or even prior notice), ***only recently has Rag & Bone begun using MIRAMAR as a new brand for its apparel items***. The recency and extent of Rag & Bone's widespread trademark/brand use of MIRAMAR is made clear by a mountain of empirical evidence, as well as by Rag & Bone's own trademark application filed June 9, 2025 for RAG & BONE / MIRAMAR (Serial No. 99224195) in connection with "Retail store services and online retail store services in the field of clothing, accessories, and footwear." Importantly, ***Rag & Bone did not claim any prior trademark use or brand use*** of MIRAMAR before mid-2025; instead, the application asserted only an "intent to use" it under 15 U.S.C. § 1051(b). *See* Dkt. No. 144 at 16, VCC ¶ 36 (stating under oath only that Rag & Bone "has a bona fide intention to use the mark in commerce").[3]

[3] MIRAMAR had no notice or knowledge of Rag & Bone's commercial use of MIRAMAR as a brand until late 2025, a few months after Rag & Bone began its nationwide re-branding campaign for its apparel. *See* Dkt. No. 54-1 at 7.

Even more importantly, on October 30, 2025 the U.S. Patent and Trademark Office ("USPTO") rejected Rag & Bone's trademark application based on MIRAMAR's '117 and '118 registrations for MIRAMAR®, finding specifically in a detailed rejection that Rag & Bone's use of its proposed MIRAMAR trademark would result in a "likelihood of confusion" among consumers—that is, trademark infringement. *See* Dkt. No. 144-27 (VCC Ex. AA). To date, ***Rag & Bone has not yet even responded to the merits of the rejection***. Instead, Rag & Bone has tried to side-step the Trademark Attorney experts at that USPTO by (a) suspending its trademark application, (b) continuing to market, advertise and promote its infringing MIRAMAR brand online and at retail all over the nation, and (c) suing MIRAMAR in this action for alleged unfair competition and tortious interference based on the actions of Meta and Amazon "taking down" a number of Rag & Bone's listings using the MIRAMAR brand, based on the trademark policing policies of those online platforms. *See* Dkt. No. 144 at 46 ¶ 78.

Because of the irreparable harm foisted on MIRAMAR, a preliminary injunction in MIRAMAR's favor is essential relief that promptly should be granted. Specifically, the irreparable harm to the MIRAMAR® brand in the consumer marketplace is quickly becoming irreversible because of the overwhelming budget and presence of Rag & Bone's widespread marketing, advertising and promotion of its intended new MIRAMAR brand online and at retail. The magnitude of Rag & Bone's presence has all but disappeared the visibility of the MIRAMAR® brand online and at retail, which is quickly disappearing from the minds of consumers as well. The infringing use by Rag & Bone has been so pervasive that MIRAMAR immediately started losing its visibility and

brand association across major online platforms including Amazon, Google, eBay, Yahoo, Meta, TikTok and other digital search and commerce channels (for example in search results for "MIRAMAR" and "MIRAMAR + CLOTHING"). *See* Dkt. No. 144 at 17 ¶ 37. This kind of "reverse confusion" is a particularly harmful species of trademark infringement, which can be remedied only via preliminary injunction.

**Legal Standards**

A preliminary injunction is a particularly essential remedy for trademark infringement, because of ***the need to protect the consuming public*** from brand confusion (not just protecting the interests of a private plaintiff), and the need to protect the trademark owner from evisceration of its distinctiveness in the minds of those same consumers in the marketplace: "Preliminary injunctions are ***routinely entered*** in cases involving trademark infringement or dilution because irreparable harm to the goodwill and reputation of the trademark owner is presumed to follow from the consumer confusion that actionable trademark infringement entails." *Volkswagen AG v. V.W. Parts, Inc.*, No. 08-820, 2008 WL 11355364, at *1 (N.D.N.Y. Sept. 8, 2008) (emphasis added) (citing *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 999 (2d Cir. 1997) (holding that likelihood of confusion will give rise to presumption of irreparable harm)).

A preliminary injunction is warranted on a showing of "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *Allstate Ins. Co. v. Landow*, No. 24-2010, 2026 WL

866199, at *2 (E.D.N.Y. Mar. 30, 2026) (quoting *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018) (internal citation omitted)). "The 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

Likely success in a trademark action results from a "likelihood of confusion as to source or sponsorship" caused by defendant's use of a likely infringing trademark.[4] *See Standard & Poor's Corp. v. Commodity Exch., Inc.*, 683 F.2d 704, 708 (2d Cir. 1982); *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003) (likely "confusion as to the origin or sponsorship of defendant's products"). This Court follows the eight *Polaroid* factors to find a likelihood of confusion: "(1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market."

---

[4] By statute, MIRAMAR's federal trademark registrations serve as "prima facie evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in connection with the goods specified in the registration." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (citing 15 U.S.C. § 1115(a)).

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009) (quoting *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 384 (2d Cir. 2005)).

"The application of the *Polaroid* test is 'not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused.'" *Id.* (quoting *Star Indus.*, 412 F.3d at 384)). Likely confusion and likely success establishes by presumption the "risk of irreparable harm." *See Am. Cyanamid Co. v. Campagna Per Le Farmacie in Italia, S.P.A.*, 847 F.2d 53, 55 (2d Cir. 1988); 15 U.S.C. § 1116(a) (statutory presumption). Finally, "The Second Circuit has long held that there is a 'strong interest in preventing public confusion.'" *Juicy Couture, Inc. v. Bella Int'l Ltd.*, 930 F. Supp. 2d 489, 505 (S.D.N.Y. 2013) (quoting *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 68 (2d Cir. 2002)).

Courts in the Second Circuit have consistently granted (and affirmed) preliminary injunctions in trademark cases where, as here, an accused infringer is newly using the same brand name in connection with goods in the same marketplace, particularly where (as here) actual confusion already has occurred. *See, e.g., City of New York by & through FDNY v. Henriquez*, 768 F. Supp. 3d 388, 409 (E.D.N.Y. 2025) (citing instances of actual confusion within an "overlapping client base"); *Crye Precision LLC v. Concealed Carrier, LLC*, 749 F. Supp. 3d 308, 332 (E.D.N.Y. 2024) (use of identical mark "inherently confusing [and] consumer confusion is presumed"); *Gen. Petroleum GmbH v. Stanley Oil & Lubricants, Inc.*, No. 24-2324, 2024 WL 4143535, at *13 (E.D.N.Y. Sept. 11, 2024) ("[E]quity will not give relief to an intentional infringer.") (quoting *Gucci Am.,*

*Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 256 (S.D.N.Y. 2012) (rejecting trademark-infringer's equitable defenses); *Styleline Studios Int'l Ltd. v. Litvack*, No. 24-1192, 2024 WL 3849484, at *4 (E.D.N.Y. Aug. 16, 2024) (infringer "failed to rebut the presumption of irreparable harm that results from the Court's finding [of] likelihood of success on the merits"); *Bravo Pizza Enters., Inc. v. Azizo*, No. 23-4540, 2023 WL 5548372, at *6 (E.D.N.Y. Aug. 29, 2023) (infringing mark "clearly designed to come as close to resembling Plaintiff's trademarks without being literally identical").

**Likely Success on the Merits Is Crystal Clear**

As the expert Trademark Examining Attorney (Mr. Philip Liu) at the USPTO has determined already, MIRAMAR is likely to succeed on its trademark infringement claim because Rag & Bone's adoption and use of MIRAMAR for its apparel created "a likelihood of confusion with [MIRAMAR's '117 Registration and '118 Registration for MIRAMAR®]." Dkt. No. 144-27 at 3. Consistent with the *Polaroid* factors, the Trademark Examining Attorney explained that "there are generally two key considerations in any likelihood of confusion analysis: (1) the similarities between the compared marks and (2) the relatedness of the compared goods and/or services." *Id.* at 4 (citing TMEP § 1207.01 and various cases). Here, each of the eight factors weighs strongly in favor of Rag & Bone's infringement of the incontestable MIRAMAR® registrations. *See Phat Fashions, L.L.C. v. Phat Game Athletic Apparel, Inc.*, No. 01-1771, 2002 WL 570681, at *4 (E.D. Cal. Mar. 20, 2002) (eight factors "substantially the same" under *Polaroid* and other tests).

Concerning the strength of the registered mark, MIRAMAR's registrations for its MIRAMAR® trademarks are longstanding and incontestable. As such, the trademarks are presumed to represent, and do represent, strong trademark rights. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 205, 105 S. Ct. 658, 667, 83 L. Ed. 2d 582 (1985) ("We conclude that the holder of a registered mark may rely on incontestability to enjoin infringement . . . .").

Concerning the proximity or relatedness of the goods, as the USPTO already determined, "The marks create the same commercial impression and the attached evidence illustrates that the goods and services are commercially related and are likely to be encountered together in the marketplace by consumers. Accordingly, consumers are likely to be confused and mistakenly believe that the products and services originate from a common source." *See* Dkt. No. 144-27 at 10.

Concerning the similarity of the marks, as the USPTO already determined, Rag & Bone's use of MIRAMAR is very similar, including because it "creates a confusingly similar commercial impression because consumers are likely to believe that registrant's mark is a condensed form of applicant's mark or that registrant has begun offering similar goods and services under another iteration of its registered mark." *See id.* at 5.

Concerning actual confusion, many reasonable consumers and industry professionals already have been confused or have witnessed confusion due to Rag & Bone's extensive use of MIRAMAR which was mistakenly believed to be associated with the longstanding and distinctive MIRAMAR® brand. *See* Dkt. Nos. 54-1 through 54-18. For example, several individuals including Mr. Theodore Jaffrey, Mr. Moses

Khuu and Mr. Dale Waters asked MIRAMAR about Rag & Bone's "apparent" use of the MIRAMAR® brand. *See* Dkt. No. 54-11 (Ascher Decl. Ex. J); Dkt. No. 54-13 (Jaffrey Decl. ¶¶ 2-14); Dkt. No. 54-16 (Khuu Decl. ¶¶ 2-7); Dkt. No. 54-18 (Waters Decl. ¶¶ 2-11). The examples of real consumer confusion (months ago) are compounding as time passes, proving the real irreparable brand harm that MIRAMAR is experiencing and suffering. *See* Dkt. No. 54-15 (Kusnetz Decl. ¶¶ 2-12); Dkt. No. 54-17 (Lorber Decl. ¶¶ 2-8); Dkt. No. 54-12 (Smith Decl. ¶¶ 2-15); Dkt. No. 54-14 (Valero Decl. ¶¶ 2-12). Even a senior executive of Nordstrom—a retail partner with whom MIRAMAR has maintained a trusted relationship for decades—contacted MIRAMAR to question why infringement issues had arisen, reflecting confusion and concern generated by Rag & Bone's misconduct. *See* Dkt. No. 54-1 (Ascher Decl. ¶ 26).

Concerning marketing channels, the primary marketing channels for both parties are online channels including Google, Meta and Amazon, driving search results for MIRAMAR to the consumer's point of purchase. As the USPTO explained, the parties' products "are likely to be encountered together in the marketplace by consumers." *See* Dkt. No. 144-27 at 10. Concerning the type of goods and the degree of care likely to be exercised by the purchaser, the parties' products are apparel primarily, which although not inexpensive, do not compel most consumers to exercise inordinate brand scrutiny to the extent needed to avoid a likelihood of confusion. *See* Dkt. No. 144 at 46.

Concerning Rag & Bone's intent in selecting MIRAMAR, while intent is difficult to ascertain directly, the circumstantial evidence here allows for a strong inference of intent, including the fact that Rag & Bone has proceeded recklessly in adopting and using

MIRAMAR in the face of not only the conflicting MIRAMAR® registrations, but the experts at the USPTO have specifically advised Rag & Bone that there is a likelihood of confusion.

Concerning the likelihood of expansion of the product lines, because MIRAMAR's primary business model is licensing its brands including MIRAMAR®, it is inherently likely to expand the MIRAMAR® brand into other new markets. *See id.*

Therefore, MIRAMAR's likely success on the merits of its trademark infringement claim is undeniable. Anything less would be irreconcilable with the conclusion of likelihood of confusion as determined already by Trademark Examining Attorney (Mr. Liu) at the USPTO.

**Irreparable Harm Already Has Occurred And Is Accelerating**

Based on its likely success on the merits of proving trademark infringement by Rag & Bone, MIRAMAR faces irreparable harm and a decidedly favorable balance of hardships. Under the Lanham Act, MIRAMAR is entitled to a rebuttable presumption of irreparable harm upon a showing of likelihood of success on the merits. *See* 15 U.S.C. § 1116(a). Even notwithstanding the presumption, MIRAMAR's loss of control over the MIRAMAR® trademark's distinctiveness, identity and goodwill, including the actual consumer confusion and marketplace displacement, is not readily quantifiable and constitutes irreparable harm. Because of Rag & Bone's much greater presence in the marketplace, MIRAMAR also has suffered and continues to suffer irreparable damage to customer relationships. *See* Dkt. No. 54-1 (Ascher Decl. ¶¶ 25-28); Dkt. No. 54-14 (Valero Decl. ¶ 12) ("Unless resolved, the continued public association between Rag &

Bone and the MIRAMAR® brand will continue to interfere with MIRAMAR's licensing activities and impair the ability of brand representatives like myself to effectively market and license the MIRAMAR® brand."); Dkt. No. 54-15 (Kusnetz Decl. ¶ 9) ("As a result of this confusion and uncertainty, and because Rag & Bone's market conduct created doubt regarding who truly controlled the MIRAMAR name in commerce and particularly in the clothing space, I determined that I could not proceed with the MIRAMAR transaction until the trademark issue was resolved. This resulted in a delay of a fully-executed term sheet and disruption to ongoing business planning and investment timelines.").

Although not required or necessary (particularly after applying the required presumption), the fact of irreparable harm under these circumstances also is buttressed by expert evaluation and opinion. *See* Lajoux Declaration (filed herewith); *see also Daybreak Game Co., LLC v. Takahashi*, No. 25-1489, 2025 WL 3443159, at *4 (S.D. Cal. Dec. 1, 2025) ("[T]he rules of evidence, including the Daubert standard, can be applied less strictly during preliminary injunction proceedings."); *Repro-Med Sys., Inc. v. EMED Techs. Corps.*, No. 13-1957, 2017 WL 2446458, at *4 (E.D. Cal. June 6, 2017) (expert declaration concerning market share correlation confirmed irreparable harm). As Expert Lajoux discusses, her review of the facts and circumstances and evidence presented on this Motion confirms that MIRAMAR faces irreparable harm in many forms, including threatened losses of (a) prospective customers and licensees for its MIRAMAR® brand, (b) goodwill connected to its established MIRAMAR® brand, (c) revenues, (d) market share, (e) reputational harm, (f) diminished online presence, and

ultimately (g) having its MIRAMAR® brand completely eviscerated and "swallowed" entirely by Rag & Bone's dominant and widespread infringing use of its new MIRAMAR brand. *See id.* 3-11 ¶¶ 5-25.

**The Balance of Hardships Strongly Favors MIRAMAR**

To avoid the balance of hardships favoring the plaintiff, a defendant must show more than commercial hardship resulting from "an activity which has been shown likely to be infringing," which argument "merits little equitable consideration." *See Triad Sys. Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995); *Chongqing Quilong Tech. Corp. v. Xinghai Hi-Tech (Shenzhen) Tech. Co.*, No. 26-61, 2026 WL 851322, at *3 (C.D. Cal. Jan. 9, 2026) (noting defendant's "calculated risk" of infringement supports balance of hardships favoring plaintiff) (citing *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983) (reversing denial of preliminary injunction where defendant was aware of patents and "took a calculated risk that it might infringe those patents")); *see also Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.").

**The Public Interest Favors Stopping Consumer Confusion**

As referenced *supra*, "The Second Circuit has long held that there is a 'strong interest in preventing public confusion.'" *Juicy Couture, Inc. v. Bella Int'l Ltd.*, 930 F. Supp. 2d 489, 505 (S.D.N.Y. 2013) (quoting *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 68 (2d Cir. 2002)).

Specifically, the relevant consuming public has a strong interest in not facing confusion in purchasing decisions or in brand reputation and recognition, while the public at large has an interest in protecting trademark rights generally.

## Conclusion

Based on the foregoing, MIRAMAR respectfully requests that this Court should enjoin Rag & Bone from any further commercial use of MIRAMAR's registered and incontestable trademark rights in and to the brand MIRAMAR in connection with any goods or services relating to apparel or brand licensing.

Dated: August 25, 2026

Respectfully submitted,

/s/ Stephen M. Lobbin

Stephen M. Lobbin (CA-SBN 181195)
** admitted in SDNY*
sml@smlavvocati.com
**SML Avvocati P.C.**
4640 Cass Street #90142
San Diego, California 92109
Tel: 949.636.1391

Attorneys for Defendant and Counterclaimant MIRAMAR

CERTIFICATE OF SERVICE

I hereby certify that, on August 25, 2026, a true and correct copy of the above document was provided to all counsel of record through the Court's CM/ECF system.

s/ Stephen M. Lobbin