**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Rag & Bone Holdings, LLC and RB Topco Sagl,

Plaintiffs,

v.

Miramar Brands Group, Inc.,

Defendant.

Case No. 1:25-cv-09937-LGS

------------------------------------------------

Miramar Brands Group, Inc.,

Counterclaimant,

v.

Rag & Bone Holdings, LLC, Guess?, Inc., WHP Global, LLC, Bloomingdale's, LLC, Nordstrom, Inc., Evereve, Inc., Revolve Group, Inc., URBN US Retail, LLC, BOP LLC, Rue Gilt Group, Inc. and Couponology, Inc.,

Counterdefendants.

**Reply In Support Of MIRAMAR's Motion For Preliminary Injunction**

Counterclaimant Miramar Brands Group, Inc. ("MIRAMAR") replies as follows in support of its Motion for Preliminary Injunction prohibiting any further trademark infringement by Counterdefendant Rag & Bone Holdings, LLC ("Rag & Bone"). *See* Dkt. Nos. 145, 159. Rag & Bone's opposition confirms the factual basis and justification for this Court's exercise of its equitable discretion in favor of enjoining further trademark infringement by Rag & Bone, so that MIRAMAR's longstanding and incontestably-registered trademark rights are legally respected and protected.

First, the expert Examining Attorney at the Trademark Office long ago determined already that Rag & Bone's ***new use of "Miramar" as a brand*** infringes MIRAMAR's longstanding, incontestable trademark registrations. Nearly a year after counsel for Rag & Bone lied to this Court about securing a prompt retraction of that determination, it remains in place. Rag & Bone never acted as it assured this Court it would. This Court has no need or factual basis to revisit (much less reverse) that expert determination by the Trademark Office. Second, the presumption of irreparable harm stands firm, which ends the inquiry and should compel this Court to enter the requested injunction promptly. Certainly, MIRAMAR continues to suffer existential, irreparable harm and hardship without an injunction, and the public interest seeks primarily to prevent the consumer and market confusion Rag & Bone exacerbates every day. Third, as a matter of exercising its equitable powers, this Court should ignore the rest of Rag & Bone's protestations because of Rag & Bone's many material misrepresentations (*i.e.*, lies) made directly to this Court, which collectively negate any entitlement to equitable consideration in favor of Rag & Bone as a miscreant, undeserving litigant.[1]

[1] Rag & Bone mischaracterizes the genesis of this dispute as a "campaign of interference" by MIRAMAR taking down infringing content online, which is protected speech that should never be enjoined, much less subject MIRAMAR to a lawsuit to begin with. *See Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009) (immunity under *Noerr-Pennington* doctrine where proposed liability burdens protected petitioning activity such as trademark takedown notices). As noted previously, this Court should deny Rag & Bone's requested preliminary injunction. *See* Dkt. No. 128.

**<u>Rag & Bone's Many Misrepresentations Should Seriously Offend This Court</u>**

This Court "sits in equity" in granting a preliminary injunction. As such, it is quite germane and frankly dispositive how (and how often) Rag & Bone and its counsel have blatantly misrepresented facts to this Court. *See Death Tobacco, Inc. v. Black Death USA*, No. 92-6437, 1993 WL 761982, at *8 (C.D. Cal. June 30, 1993) (district court "sits in equity" in considering injunctive relief and "must take all equitable considerations into account") (citing *Avon Shoe Co. v. David Crystal, Inc.*, 279 F.2d 607, 613 (2d Cir. 1960)); *Aris-Isotoner Gloves, Inc. v. Berkshire Fashions, Inc.*, 792 F. Supp. 969, 969 (S.D.N.Y. 1992) (court "may decline to exercise its equitable powers in favor of [undeserving] party"). Just a few of the more egregious examples are as follows.

First, concerning the October 2025 likelihood of confusion determination by the U.S. Patent & Trademark Office ("USPTO"), Rag & Bone's counsel promised to "respond" promptly and "overcome the refusal." *See* December 2, 2025 Hearing Transcript at 23:12-13. Instead, however, Rag & Bone promptly ***suspended*** the proceedings because it never had a reasonable basis to "overcome the refusal" as promised, and the USPTO's likelihood of confusion determination remains in place today, a year later. *See* Dkt. No. 145 at 4.

Second, in the comprehensive hearing this Court held on April 13, 2026, Rag & Bone admitted it is using MIRAMAR as a "sub-brand" (which is "brand use," of course), but then its witness Ms. McCormick back-pedaled, claiming she "misspoke" (almost certainly after correction from counsel). *See* Tr. 45:1-8; 46:1-2. Rag & Bone also denied later that MIRAMAR was "promoted as a brand." *See* Tr. 75:7-9. In its documents,

however, Rag & Bone confirmed its very clear and intentional ***brand use*** in a February 19, 2025 leadership recap: "Make Miramar ***its own brand*** / whole product line of Miramar." *See* Exhibit 1 (PLAINTIFFS_070645) (emphasis added).[2] As stated in another "marketing recap" with a cc to Ms. McCormick herself: "MIRAMAR AS A SUBRAND ON WEBSITE." *See* Exhibit 2 (PLAINTIFFS_066423). As still another document confirms, "Drive upper funnel ***brand awareness for Miramar*** and increase in-market audience size." *See* Exhibit 3 (PLAINTIFFS_115847) (emphasis added). Dated just before the April 2026 hearing, another document states: "Miramar: AR wants to make sure continue to invest aggressively / ***are not scared of going after Miramar***; fix other areas in parallel." *See* Exhibit 4 (PLAINTIFFS_001083) (emphasis added).

Third, and also in the April 13, 2026 hearing, Rag & Bone asserted that its Moynihan Train Hall store location was "just a Rag & Bone pop-up shop" (*see* Tr. 74:2-6), but recent images show the store remains identified as a "fully immersive concept store" for "rag & bone/***MIRAMAR***." *See* Exhibit 6 at 3 (emphasis added). Fourth, Rag & Bone's most knowledgeable witness claimed she had not heard about any recent use of the slogan "Meet Miramar" (*see* Tr. 90:6-91:4), but the slogan remains prominent even today. *See* Exhibit 7 ("MEET MIRAMAR. The original Sweatpant Jeans that we can't keep in stock."). Fifth, Rag & Bone asserts the parties operate through materially different distribution channels (*see* ECF No. 159 at 16-17), but a recent Amazon search for "miramar" displays a sponsored Rag & Bone advertisement with a "Miramar"

[2] Exhibits 1-9 are attached herewith the Reply Declaration of Stephen Y. Ascher, Jr. ("Ascher Reply Decl.").

category immediately above MIRAMAR®-branded volleyballs and apparel. *See* Exhibit 8.

This Court should hold firm on exercising its equitable discretion only in favor of parties demonstrating integrity and complete truthfulness in key representations of fact to the Court. Because Rag & Bone is demonstrably ***not*** such a party, its many misrepresentations should weigh in favor of granting MIRAMAR's requested preliminary injunction.

**Rag & Bone's Remaining Arguments Fail Beyond Its Equitable Offenses**

Rag & Bone argues that MIRAMAR "will not succeed on its infringement claim," which is a silly argument in view of the fact that it has succeeded already. MIRAMAR's success already exists because of the expert analysis of Trademark Examining Attorney Mr. Philip Liu at the USPTO. Rag & Bone critiques the USPTO's analysis as "cursory," which is meritless because district courts regularly rely on the USPTO's analysis of likely trademark confusion. *See Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 852-53 (2d Cir. 1988) ("This Court shows deference to the factual findings of the United States Patent and Trademark Office examiners.") (citing cases). Rag & Bone's initial strategy was misdirection, which worked because it tricked this Court. Counsel for Rag & Bone assured this Court not to worry because it would change the USPTO's conclusion, and would do so promptly. Those assurances were lies. Instead, Rag & Bone now wants to burden this Court with finding the right analytical jiu-jitsu to be more of an expert in matters of trademark infringement than the Trademark Office itself, so

Rag & Bone can continue to avoid engaging with the USPTO directly and substantively in a futile match of wits.[3]

Concerning the strength of the registered mark MIRAMAR®, Rag & Bone ignores (and therefore assents to) its strength based on the Supreme Court's seminal holding that incontestability equals strength for purposes of injunctive relief. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 205, 105 S. Ct. 658, 667, 83 L. Ed. 2d 582 (1985) (registrant "may rely on incontestability to enjoin infringement"). Incontestability also confirms secondary meaning, another factor supporting strength. *See Birmingham v. Mizuno USA, Inc.*, No. 09-566, 2011 WL 1299356, at *10 (N.D.N.Y. Mar. 31, 2011) (confirming "strong secondary meaning by virtue of [] incontestable registration" and "mark has achieved strong acquired distinctiveness").

Rag & Bone's other arguments fail to tackle the fact that MIRAMAR® is not descriptive whatsoever; instead, MIRAMAR® is arbitrary and indeed "fanciful" of a lifestyle feeling, not any product in particular much less the parties' competitive apparel items. *See RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 120 (2d Cir. 2022) ("arbitrary or fanciful" the strongest trademarks). The facts of the *RiseandShine* case are inapposite to these circumstances, however, because of "the strong logical associations

---

[3] Rag & Bone asserts that this Court "is obligated to ultimately render its own decision on the merits" of the trademark infringement analysis, citing a lonely 2008 decision. *See Real News Project, Inc. v. Independent World Television, Inc.*, No. 06-4322, 2008 WL 2229830, at *11 n.14 (S.D.N.Y. May 27, 2008). This Court is perfectly within its discretion to rely on the analysis of the expert Trademark Examining Attorney, however. *See Goya Foods*, *supra*.

between [the asserted trademark] 'Rise' and coffee." Here, there is no such inherent logical association between MIRAMAR and apparel of any kind. *See id.* at 121.

Concerning the similarity of the marks, Rag & Bone dismisses the USPTO's expertise and asks this Court to undo it, based on a fiction that it does not use "Miramar" as a brand name but instead "a secondary, non-source designation . . . accompanied by the RAG & BONE house brand." This is blatantly false, just based on the many exhibits showing Rag & Bone's new, prominent use of MIRAMAR alone, as well as its executives' admissions of the big push to make it the company's main brand instead of "Rag & Bone." *See supra*. Rag & Bone admits it "use[s] the word 'Miramar' by itself in Rag & Bone stores, on its branded website, or on its own Rag & Bone social media feeds and direct-email promotions," but claims such use "is clearly associated with Rag & Bone in those contexts." But the fact remains that Rag & Bone has separated "Miramar" as a brand from its now-stale "Rag & Bone" legacy. *See, e.g.*, Exhibit 7 ("MEET MIRAMAR"); Exhibit 9 (Evereve customer receipt showing brand use of MIRAMAR without any associated use of "Rag & Bone" name).

Concerning the proximity or relatedness of the goods, again Rag & Bone ignores the USPTO's analysis, arguing instead that the parties' apparel products "do not compete with each other in any meaningful sense." This is incorrect, because MIRAMAR—like Rag & Bone—sells premium apparel products to a higher-end customer, including on Amazon, Meta and other online sources for both parties. *See, e.g.*, Exhibit 8 (Amazon search results for "miramar" displaying a sponsored Rag & Bone advertisement with a "Miramar" category immediately above MIRAMAR®-branded volleyballs and apparel).

For example, Rag & Bone's online store has a separate tab for "Miramar" alone. There is no requirement that competition be direct in all circumstances for goods to be related for purposes of likelihood of confusion. Moreover, Rag & Bone ignores that both parties are engaged in directly competitive brand-licensing, which is completely proximate in the sense that Rag & Bone's infringing use MIRAMAR® precludes MIRAMAR from licensing the brand to another competitor of Rag & Bone. *See* Ascher Reply Decl. ¶ 11.[4] This factor favors MIRAMAR. Rag & Bone argues that the parties' MIRAMAR apparel products are different, with different customers and price points, but this is simply not so.

Concerning actual confusion, the extensive evidence of confusion "speaks for itself." Rag & Bone's credibility attacks against each of a cadre of witnesses based on a friendship or professional relationship are so baselessly cynical as to be unseemly and ultimately inapposite. There is no basis to suggest that each of so many witnesses would misrepresent facts or opinions, under oath to a federal court, because of a friendship. Moreover, more actual brand confusion has been revealed in Rag & Bone's document production. *See, e.g.*, Exhibit 5 at 20 (Meta employee expressing confusion about "why someone from Miramar would file against us since you [at Rag & Bone] have the partnership").

Concerning Rag & Bone's intent in selecting MIRAMAR, the fact that the record is now replete with Rag & Bone's misrepresentations, lies and reckless

[4] MIRAMAR's brand licensing business demonstrates "bridging the gap," including licensing into the same premium sub-market in direct competition with Rag & Bone. This factor also replicates in substance the "quality of the products" factor.

mischaracterizations about just about every adverse witness and fact, demonstrates the kind of malevolence this Court is facing in considering a richly-deserved preliminary injunction against Rag & Bone's continued illegal business practices harming the consuming public, not to mention MIRAMAR and its business interests irreparably. Concerning marketing channels and the degree of care likely to be exercised by the purchaser (what Rag & Bone calls "sophistication of buyers"), again Rag & Bone fails to recognize that MIRAMAR also sells premium-priced apparel, so this factor also favors MIRAMAR. *See also* Exhibit 8.

Therefore, MIRAMAR's likely success on the merits of its trademark infringement claim is undeniable. Anything less would be irreconcilable with the conclusion of likelihood of confusion as determined already by Trademark Examining Attorney (Mr. Liu) at the USPTO.

**Rag & Bone's "Laches" Interest Arguments Fail**

As if it had any equitable honor left to spend, Rag & Bone argues that laches is relevant here as an equitable consideration. It is not. Rag & Bone still insists it is not even using MIRAMAR® as a brand, but certainly it was not doing so before mid-2025. After that, August 2025 was the first time Mr. Ascher of MIRAMAR could even begin to conduct his due diligence on the infringement issue, much less hire counsel, file suit and request a preliminary injunction, all of which he did within just a few months. *See* Ascher Reply Decl. ¶ 12 (noting Mr. Ascher's "medical crisis" including "a serious heart issue" preventing him from "giv[ing] any attention to this matter even if I had known anything about it"). Therefore, the laches argument sinks like a rock and should be

ignored altogether. Rag & Bone argues "inexcusabl[e] delay[]," but there is no delay whatsoever in the timeline. Not to mention the fact that any prejudice to Rag & Bone is self-inflicted, especially after the USPTO in October 2025 terminated any sliver of reasonableness in Rag & Bone's decision to move forward in the marketplace with a clearly infringing new brand name.[5]

Rag & Bone argues that its use of "Miramar" is "longstanding," but as demonstrated by the actual indisputable facts, only in mid-2025 did Rag & Bone begin using MIRAMAR as a brand (that is, as a trademark). Only then did this dispute emerge, and MIRAMAR behaved with diligent haste in presenting its infringement claim and request for an injunction to this Court. As a small-company trademark owner whose principal Mr. Ascher was undergoing a medical crisis in mid-2025, MIRAMAR did its due diligence first before sending "cease and desist" letters in mid-late 2025, then it filed suit and requested a preliminary injunction in early 2026. *See* Dkt. No. 54-1 at 7; Ascher Reply Decl. ¶ 12.[6]

---

[5] Rag & Bone continues to present the fiction that it "began using the term 'Miramar' in 2013," which misrepresentation alone negates any laches defense as a matter of equitable discretion. As is clear to everyone including Rag & Bone's executives, the use of MIRAMAR as an infringing trademark began only in 2025, just before it filed its rejected trademark application. Not only is there no basis for any "presumption" of laches, but there is no basis for any laches consideration whatsoever.

[6] Rag & Bone argues that Mr. Ascher and Sinjin Smith "falsely testified" to discovering Rag & Bone's "use of the word 'Miramar' in August and September 2025," this is another mischaracterization. Mr. Smith gave his best recollection, and Mr. Ascher during this period of time was literally struggling to stay alive and could not perform any corporate duties during the entire month of March 2025. *See* Dkt. No. 54-1 at 7. Of course, as Rag & Bone admits, it was not until June 2026 that it filed a trademark

**Rag & Bone's Irreparable Harm And Hardships Arguments Fail**

Rag & Bone argues that the acknowledged presumption of irreparable harm could be rebutted because of "conduct during the litigation"? Perhaps Rag & Bone is referring to its own false misrepresentations to this Court, which certainly should cement the Court's equitable favor on the side of the requested preliminary injunctive relief. Further, Rag & Bone presents no countervailing expert report to rebut any of the analysis of MIRAMAR's expert, concluding that the harm faced by MIRAMAR indeed is irreparable. Moreover, it is obvious that MIRAMAR faces irreparable harm when control over its registered and incontestable MIRAMAR trademark has been co-opted by a much larger organization. This is classic "reverse confusion" which has vitiated the commercial value of MIRAMAR's trademark rights, nearly completely.

Rag & Bone argues that an injunction would "inflict substantial harm" on its apparel business, which is another misrepresentation because the injunction would serve only to compel Rag & Bone to do what responsible businesses do every day—that is, secure the necessary licenses and/or other rights required to promote a new brand that is subject to third-party rights including incontestable, federal trademark registrations. A preliminary injunction merely would compel Rag & Bone to do what it was required to do in 2025 before launching its new "Miramar" brand.

---

application after deciding to promote "Miramar" as a brand for the first time just a few months earlier.

**Rag & Bone's Public Interest Arguments Fail**

Rag & Bone whines that an injunction preventing its further trademark infringement would cause "massive disruption . . . with cascading consequences for Rag & Bone's bottom line, business relationships, and consumer and industry goodwill." Perhaps a grain of accountability would finally dawn on Rag & Bone for its own "massive" mistake in hooking its wagon to another's incontestable federally-registered trademark in and to its longstanding MIRAMAR® brand. The public demands that trademark laws be followed, not flouted.

**Conclusion**

MIRAMAR again respectfully requests that this Court promptly should enjoin Rag & Bone from any further commercial use of MIRAMAR's registered and incontestable trademark rights in and to the brand MIRAMAR® in connection with any goods or services relating to apparel or brand licensing.

Dated: October 16, 2026

Respectfully submitted,

/s/ Stephen M. Lobbin

Stephen M. Lobbin (CA-SBN 181195)
** admitted in SDNY*
sml@smlavvocati.com
**SML Avvocati P.C.**
4640 Cass Street #90142
San Diego, California 92109
Tel: 949.636.1391

Attorneys for Defendant and Counterclaimant MIRAMAR

CERTIFICATE OF SERVICE

I hereby certify that, on October 16, 2026, a true and correct copy of the above document was provided to all counsel of record through the Court's CM/ECF system.

s/ Stephen M. Lobbin